## CONNER v. ROOT (O'DONNELL, Intervenor).

1. A certificate of deposit may be the subject of gift *causa mortis*, and if delivered by the donor during her last illness, in anticipation of death, to a third person for the use of the donee, the title passes upon her death, though the certificate is payable to the donor's order, and has not been indorsed by her.

2. Where there is evidence that a married woman made a gift *causa mortis* to a person other than her husband, evidence that her illness was caused by her husband's ill-treatment of her is admissible as tending to show a motive and a reason for making the gift, and so preventing the property from descending to her husband.

3. Under the statutes a married woman is under no disability as to making a gift *causa mortis* by reason of coverture.

4. In an action between the administrator of a deceased woman and one claiming certain property as a gift *causa mortis* from her, the subject of the litigation being the validity of the gift, the husband and heir of deceased is not a competent witness on behalf of the administrator as to matters occurring before his wife's death, under General Statutes 1883, chapter 116, section 1, which provides that no party to an action, or person directly interested in the event thereof, shall testify therein of his own motion when any adverse party sues or defends as the executor or administrator of any deceased person.

*Error to Superior Court of Denver.*

This was an action commenced by Charles Conner, October 5, 1883, against Amos H. Root, upon an agreement in writing, as follows:

"Denver, Colorado, May 11, 1882.

"Whereas, Charles Conner did, on the 18th day of January, 1882, deliver and indorse over to me one certain certificate of deposit issued by the Colorado National Bank of Denver to one Annie Reardon, for the sum of $943.40, and dated December 23, 1881; and whereas, said certificate of deposit showed on the back of the same an indorsement, appearing to be the indorsement of the said Annie Reardon; and whereas, I did write my name on the back of said certificate of deposit under a written guaranty of the genuineness of the signature of indorsement thereon, and did on said guaranty receive the said money from the said bank; and whereas, the said Charles Conner claims that the said money rightfully and legally belongs to him, and desires me to pay the same over to him; therefore, I agree that whenever the said Charles Conner shall show that he is legally and justly entitled to the said money, and does legally and fully secure me from all liability of loss or legal complication by reason of paying the said money over to him, I will then pay to him the said money, with interest thereon at the rate of ten per cent. per annum, reckoned from the said date of his delivery to me of the said certificate of deposit.

[Signed]          "A. H. Root."

The Annie Reardon named in the certificate referred to was married to one Hennessey, January 1, 1882, and died early in the morning of the 18th day of the same month.  Thomas J. O'Donnell was administrator *de bonis non* of her estate, and as intervenor in this action recovered judgment for the amount named in said certificate. Conner, the plaintiff, moved for a new trial, for reasons among which were the following: "The court erred in allowing Hennessey, the husband and heir at law of Johanna Hennessey, deceased, to testify as a witness." " The court erred in rejecting evidence as to the motives which actuated Mrs. Johanna Hennessey in giving her property to Mrs. Maggie Hunt," — which motion was denied.  When the deposit was made, the depositor wrote her name in a book of the bank kept for such purpose. To that signature the cashier of the bank noted in the book at the time that she had a sore finger.  On the 17th day of January, 1882, said Conner had this certificate of deposit at the bank with the name of the depositor indorsed thereon; the bank declined payment thereon for the reason that the indorsement did not appear to be like the signature written in the book.  On the next day the said Root went with the said Conner to the bank, and guarantied the genuineness of the indorsement, and the bank then paid the money upon it.  The trial was to the court.  It seems that the contest was over the genuineness of the indorsement.  Several experts gave their opinion in evidence that the indorsement had not been made by the said depositor.  The claim of Conner, the plaintiff, was that the title to said certificate had been legally transferred to him by the said depositor, the payee therein named, by gift *causa mortis;* that the same was accordingly given and delivered to him during the last sickness of said payee in contemplation of death, for the payment of her debts, and the residue thereof for Maggie Hunt; and in the argument here it is claimed upon his part that the evidence clearly establishes such gift, and

that there was no conflict in the evidence touching the same; that no indorsement of the certificate was necessary in the premises; that the court erred in giving judgment for the said intervenor. The said Conner, the plaintiff, and the said Maggie Hunt were married after the death, and before the trial. The evidence touching the gift was as follows: "Dr. Blickensderfer testified that he had attended the deceased professionally during her last sickness; that he called upon her on the 12th day of January; that her mental condition was then good,— that she knew what she was saying and doing; he had called on the 8th day of January,— that she was suffering with pain and fever. The doctor was asked what was the cause of her illness. Objection was made to this evidence for that it was immaterial, which objection was sustained by the court; whereupon the plaintiff offered to show by the witness that the illness of the deceased had been caused by the brutal treatment of her husband on the first night of their marriage; that she regarded him with horror; that she called upon the neighbors to keep him from her presence; that he had come into her room and used abusive language towards her, and nearly turned her out of bed looking for keys; and that she was in perfect health when married,— all of which was objected to for the same reason, and the objection sustained. Thomas Dooley testified that he was brother to Maggie Hunt; was acquainted with deceased in her lifetime, and saw her during her last sickness; that his sister, Maggie Hunt, was nursing her; that he was at her room on the 12th day of January, when she was in bed sick; his sister asked him to stay while she went down street for a bed-pan, which he did. Conner, the plaintiff, came in while he was there. Deceased said she was glad to see him, and asked him to come over to the bed; that she took from under her pillow some keys, picked out one in the bunch and gave it to Conner, and directed him to go and open a trunk in the room, get a pocket-book

rolled up in a cloth there, and bring it to her, which Conner did. She opened it and got out a certificate on the bank, and handed it to Conner and said: 'There is a certificate on a bank. I want you to go and draw that money, pay up what I owe you, and the remainder I want you to give to Maggie.' Conner turned it over and looked at the back, and said he could not draw the money without her name on the back, and reminded her that a while previous she had given him a bank certificate, and he could not get the money on it for the reason she had not put her name on the back. She then asked for a pen. There being no pen there, Conner gave him the key to his room, and asked him to go there and get pen and ink, which witness did. Conner then got a book and laid it down on the bed and gave her the pen, when she asked him to raise her up. He did so. She took the pen and tried to write her name on the certificate, then threw the pen down and said she could not sign it. He said he could not get the money on it then. Then she asked him to go around behind her and hold her hand; that she thought she could then write her name. He did so, and took hold of her hand with the pen, and wrote the name on the certificate. She then gave it to him and said: 'I want you to get that money so Hennessey shall never get any of it. He robbed me of $140 or $150. When I get well I am going to get a bill of divorce from him. Charlie says he would. To-morrow or next day I want you to go down and fetch up a lawyer. I have got some property in St. Louis; I want to will that too.' About that time his sister, Maggie Hunt, returned, and the doctor came, and the witness went away. Upon cross-examination the witness stated that the deceased said she would get a divorce if she got well, and said that was the way he had stated it in his examination in chief. Maria Clark testified that she was acquainted with the deceased in her life-time; that she and Maggie Hunt nursed and cared for her during her last

sickness; that the husband, Mr. Hennessey, came there sometimes. The deceased said to her that he had not treated her right; had robbed her the first night of their marriage — robbed her of one hundred and some dollars; had ruined her for life; had murdered her; and said she didn't want him to enter her room at all. Saw Hennessey in the room turning up the pillows, and turned her over in the bed. Had a conversation with the deceased during her sickness, in which she said she had made an assignment of her bank certificate to Charles Conner to pay her debts, and after that the remainder was to go to Maggie Hunt; that she didn't want her money to go to Hennessey, because he had robbed her, and almost killed her, and that she wanted her funeral expenses paid out of the certificate. Charles H. Miller testified that he knew the deceased in her life-time; had known her from October, 1881; that she and Maggie Hunt kept a restaurant on Larimer street. Called to see her about four days before her death. Maggie Hunt was there. He sat down at the bedside of the deceased and shook hands with her. She said: 'Oh, Mr. Miller, I made a terrible mistake. I thought I had married a man, but I married a brute.' She said that she had given Conner a certificate of deposit,— money she had in bank,— that he had spent money for her, and he was to pay himself, and pay the necessary expenses, and, if she died, the funeral expenses, and the rest to go to Maggie; that he asked her if she had indorsed the certificate, and she said she made out to. On cross-examination the witness testified that he was a lawyer by profession; was then engaged as a newspaper correspondent. Mrs. Conner, formerly Maggie Hunt, the donee, offered as a witness, but held by the court incompetent under our statutes. Charles K. McHatton, the undertaker, testified that he buried the deceased, and that Conner, the plaintiff, had paid him the expenses thereof. Sarah Stowell testified that she was acquainted with the deceased in her life-time, and the plaintiff of-

fered to prove by this witness the aversion of the deceased for her husband, and what the deceased had stated to her concerning the same; but the court sustained the objection thereto. Fred Fishback testified that he was acquainted with the deceased during her last illness, and that she said she had given what she had in the bank to Charlie Conner, and that Maggie Hunt had been with her so long, and had worked with her, and that she was to have it. Hennessey testified that about six days before the death of his wife he was in the room where she was, when she threw a pitcher at Maggie Hunt, and charged that she and Conner were robbing her; that Maggie Hunt then said she was raving. Mrs. Kennedy testified for the intervenor, that she was not acquainted with the deceased; that she had been in her room once while she was sick, at which time no one was there with her except the husband, Hennessey; that she heard the deceased say to her husband that the keys were under her pillow, or else in the trunk; to take care of them,— that Maggie and Conner would rob her,— had done it partly; that she had $150, and it was nearly gone."

Mr. L. C. ROCKWELL, for plaintiff in error.

Messrs. T. J. O'DONNELL and O. S. WILSON, for defendants in error.

STALLCUP, C. We cannot agree with counsel for appellant that the evidence is all one way, and against the finding of the court. If the gift and delivery were made during the last sickness of the donor, in anticipation of death therefrom, the donation became complete upon such death; and a certificate of deposit may be the subject of such gift without indorsement. Upon this subject the law is stated in section 1148, 3 Pom. Eq. Jur., as follows: " All kinds of personal property, using the word in its broad mercantile sense as equivalent to assets, which are capable of manual delivery, of which the title, either

legal or equitable, can be transferred by delivery, may be the subject-matter of a valid donation *causa mortis*. That all actual chattels, including money, either coin or bank-notes, may be donated has never been questioned. Whatever doubt may have once been entertained, the rule is now well established that all things in action which consist of the promise or undertakings of third persons, not the donor himself, of which the legal or equitable title can pass by delivery, may be the subject of a valid gift, including promissory notes, bills of exchange, checks, bonds, mortgages, savings bank pass-books, certificates of deposit, policies of insurance, and the like; and it is settled by the recent cases that a valid donation of negotiable instruments may thus be made without indorsement." The delivery may be made to the donee or to another for the donee's use. Section 1149. Under our statutes, in the making of such gift of such property, a married woman is under no disability by reason of her marriage. Though courts do not lean against gifts *causa mortis*, the evidence to establish them should be clear and unequivocal. Section 1146.

The deceased was attended to the last by Conner and the donee, and the funeral expenses were paid by Conner. Had the deceased feelings of aversion against her husband calculated to prompt her to make the donation as claimed by plaintiff? Wrecked, as she was, upon the threshold of her wedded life, if the cause thereof was according to the evidence offered, it seems but natural and reasonable that she should turn, as it is said she did, from him who was her husband to her who seemed kind and constant, and, as best she could, divert from him to her what little of property and money she would have left after her death and burial. There being a controversy as to the donation, evidence upon this point was in corroboration of the other evidence in support of the donation, and was therefore admissible. While there was some evidence on this question, it appears that the court regarded

it improper, and sustained the objections whenever made against its admission. The court erred in rejecting this evidence offered to show the nature and cause of this illness of deceased, and the conduct of her husband touching the same, as the same was of a character to show the motives and reasons for making the gift of the certificate to another, and so diverting it from her husband, to whom the same would have descended. *Gilham v. French*, 6 Colo. 196. And the court erred in denying the motion of the plaintiff for a new trial. Under chapter 66, General Statutes, the said Conner, Hunt and Hennessey were under like restrictions as to the right to testify in the case, and such right is limited to facts occurring after the death of the deceased, except as specified therein. The judgment should be reversed.

RISING and DE FRANCE, CC., concur.

PER CURIAM. For the reasons assigned in the foregoing opinion the judgment of the superior court is reversed and the cause remanded for a new trial.

*Reversed.*