.JAMES A. RIDDEN, Respondent, v. JAMES H. THRALL et al., Appellants.

E., who had money on deposit in various savings banks, delivered a box, containing his bank-books, to plaintiff, stating to the latter that he was about to go to the hospital to have an operation performed which he apprehended might cause his death, and that, if he did not return, he gave plaintiff the box and its contents. E. went to the hospital; the operation was performed, which was not dangerous and was apparently successful, but, while at the hospital, he died suddenly of a disease with which he was afflicted when he went to the hospital, other than that for which the operation was performed. Before he went, he had been living with plaintiff; he left a letter in his room directed to plaintiff, which stated it to be his "last will and request," in case he did not survive the effects of the operation. The letter contained this clause: "You will take full charge of all my personal effects of every kind, and to have and to hold the same unto yourself, your heirs and assigns forever. You will find my papers and all my accounts in the box." In an action to determine plaintiff's right to the deposits in one of the savings banks, held, that while the letter alone might not be sufficient to establish a gift, it was competent as corroborating evidence that the gift was consummated by the delivery of the bank-books; that no other formality was necessary to vest the possession and title in the donee; and that, therefore, plaintiff was entitled to the deposits. ·

A by-law of the bank, printed in the bank-book in question, required an order or power of attorney to authorize any one, aside from the depositor, to draw out the deposits. Held, that this did not affect plaintiff's right; that any owner of the book was entitled to draw upon presentation of the book, and giving satisfactory evidence of ownership, and the bank could not require an order or power of attorney as a condition of payment.

Also held, that the gift was not rendered invalid by the fact that the donor did not die of the disease from which he apprehended death.

To sustain a gift causa mortis, it must be made under apprehension of death from some present disease, or other impending peril, and it becomes void by a recovery from the disease, or escape from the peril. It is not necessary that it should be made in extremis and when there is no time or opportunity to make a will; nor is it essential, in order to render the gift effectual, that the donor should die from the apprehended disease; it is sufficient if, before his recovery from that disease, he die from some other disease existing at the same time.

Death from a surgical operation made necessary by a present disease, is death from the disease, and this, although the decedent voluntarily sub-

mitted himself to the operation, and a gift may be sustained in such case as a gift made in the apprehension of death from the disease.

Any delivery of property which transfers either the legal or equitable title is sufficient to effectuate a gift.

Reported below, 45 Hun, 185.

(Argued January 28, 1891; decided February 24, 1891.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made December 10, 1889, which affirmed a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

This action was brought originally against the Manhattan Savings Bank to recover the amount of deposits made by Charles H. Edwards, deceased. By and under an order of interpleader, the money was paid into court, and defendants, who claimed the funds as administrators of the estate of said Edwards, were substituted as defendants.

The material facts are stated in the opinion.

*Carlisle Norwood, Jr.,* for appellants. It is essential to a gift *causa mortis,* that the donor makes it in apprehension of death from an illness which then has its grasp upon him. (2 Kent's Comm. 244, 444; *Grymes* v. *Hone,* 49 N. Y. 17, 30; *Williams* v. *Guile,* 117 id. 343; *Hedges* v. *Hedges,* Pr. in Ch. 269.) A valid gift *causa mortis* cannot be made by one in anticipation of some peril to his life, or in apprehension of death from a future cause of death. (*Irish* v. *Nutting,* 47 Barb. 370; *Gourley* v. *Linsenbigler,* 51 Penn. St. 345; *Smith* v. *Dorsey,* 38 Ind. 451; *Curtis* v. *Barrus,* 38 Hun, 165, 167; *Taylor* v. *Henry,* 48 Md. 550, 559; *Grattan* v. *Appleton,* 3 Story, 755, 763; 1 Williams on Ex. [6th Am. ed.], chap. 2, § 4; 2 Schouler on Per. Prop. [2d ed.] 145, 146; *Cosner* v. *Snowden,* 54 Md. 175, 185; *Duffield* v. *Elwes,* 1 Bligh, 497, 533; 3 Redf. on Wills, 300.) The policy of the law is opposed to gifts *causa mortis* because of the danger of fraud, and the law requires much stronger proofs to sustain such gifts than is demanded to prove an ordinary transaction. (2 Kent's Comm. 444; *Staniland* v. *Willott,* 3 McN. & Gor. 664; *Grymes* v.

*Hone*, 49 N. Y. 23; *Shirley* v. *Whitehead*, 1 Ired. 130; *Harris* v. *Clark*, 3 N. Y. 93; *Delmott* v. *Taylor*, 1 Redf. 417, 423; *Hatch* v. *Atkinson*, 56 Me. 324, 327; *Raymond* v. *Sellick*, 10 Conn. 479, 484.) To sustain a gift *causa mortis* the law requires the most clear circumstantial and satisfactory proof. (*Kenny* v. *Public Adm.*, 2 Bradf. 319; *Gray* v. *Gray*, 47 N. Y. 556; *Cosnahan* v. *Grice*, 15 Moore, 215, 222; *Prince* v. *Hazelton*, 20 Johns. 501.) The letter dated Brooklyn, September 30, 1888, which was addressed to Jas. A. Ridden, purporting to be signed C. H. Edwards, and which it is alleged was found in the room in plaintiff's house, formerly occupied by Charles H. Edwards, does not support the *causa mortis*. (*McGrath* v. *Reynolds*, 116 Mass. 566, 568; *Coppock* v. *Kuhn*, 21 Wkly. L. Bul. 601; *Tilson* v. *Terwilliger*, 56 N. Y. 273; *Robinson* v. *Cushman*, 2 Den. 449; *Wilcox* v. *Wilcox*, 46 Hun, 32, 38; *Judd* v. *Cushing*, 50 id. 181, 184; *Barber* v. *Bennett*, 58 Vt. 476, 483.) However apparent the intention of the deceased is to make a gift, such intention is of itself unavailing to sustain it. (*Beaver* v. *Beaver*, 117 N. Y. 421, 429; *Young* v. *Young*, 80 id. 422; *Curry* v. *Powers*, 70 id. 212; *In re Garra*, 15 N. Y. S. R. 637; *Ward* v. *Turner*, 2 Ves. Sen. 431.) Delivery is essential to constitute a valid gift. The delivery must be such as to vest the donee with the control and dominion over the property, and to absolutely divest the donor of his dominion and control, and the delivery must be made with the intent to vest the title of the property in the donee. (*Jackson* v. *T. T. S. R. R. Co.*, 88 N. Y. 520, 526; *Beaver* v. *Beaver*, 117 id. 421, 429; *In re Crawford*, 113 id. 560, 564; *Basket* v. *Hassell*, 107 U. S. 602, 614; *Allen* v. *W. S. Bank*, 69 N. Y. 314, 321; *Smith* v. *B. S. Bank*, 101 id. 58, 60; *Walsh's Appeal*, 122 Penn. St. 177, 188, 189; *Murray* v. *Cannon*, 41 Md. 466, 477, 478; *Gonnel* v. *Murray*, I. R. [3 Eq.] 460, 471; *Ashbrook* v. *Ryan*, 2 Bush. 228; *Pierce* v. *B. S. Bank*, 129 Mass. 425.)

*John H. Corwin* and *Wm. D. Veeder* for respondent. The deceased, Charles H. Edwards, made a valid gift *causa mortis*

of the fund in the bank. (*Champney* v. *Blanchard*, 39 N. Y.
111; *Williams* v. *Guile*, 117 id. 343.) There was a good and
effectual delivery with intent to pass the title *in præsenti.*
(*Westerloo* v. *Dewitt*, 36 N. Y. 340; *Champney* v. *Blanchard*,
39 id. 111; *Penfield* v. *Thayer*, 2 E. D. Smith, 305; *Trow* v.
*Shannon*, 8 Daly, 239–243; *Walsh* v. *Sexton*, 55 Barb. 251;
*Johnson* v. *Spies*, 5 Hun, 468; *Bedell* v. *Curll*, 33 N. Y. 581;
*Allerton* v. *Lang*, 10 Bosw. 362; *Walsh* v. *B. S. Bank*, 17
N. Y. Supp. 669; *Gaynor* v. *S. Bank*, 9 N. Y. S. R. 499;
*Grymes* v. *Hone*, 49 N. Y. 17.) The gift was made in con-
templation of death. (*Williams* v. *Guile*, 117 N. Y. 349.)
Upon the question of intent and of the apprehension of death,
the letter is most important, and its admission proper. (*John-
ston* v. *Williams*, 90 N. Y. 668.)

EARL, J. On the 1st day of October, 1888, Charles H.
Edwards had money on deposit in savings banks and kept the
savings banks books in a tin box, and on that day he delivered
the tin box to the plaintiff, informing him that he was about
to go St. Luke's Hospital in the city of New York to have an
operation performed for hernia, and that he was apprehensive
he might die from the result of the operation, and said to him
that if he did not return, he gave him the box and its contents.
He went to the hospital on the next day, and on the fifth day
of October an operation was there performed for Inguinal
Hernia. The operation was not dangerous and was apparently
successful. But on the sixteenth day of October he suddenly
died from heart disease, with which he was afflicted when he
went to the hospital. He had not returned from the hospital
and had not recovered from the disease for which the opera-
tion was performed, nor from the results of the operation.

The defendants claim that the circumstances were such that
a valid gift was not made, mainly because Edwards did not
die from the disease on account of which he went to the hos-
pital and from which he apprehended death might ensue.

The case is novel in some of its features and interesting. I
have carefully considered the able argument submitted on

behalf of the appellants, and am satisfied that the judgments of the courts below upholding the gift are right.

The gift was sufficiently proved. The facts which took place at the time of the gift on the first day of October were testified to by the plaintiff's wife. There were sixteen bankbooks, and they represented about $40,000 of deposits. Such a gift should be proved by very plain and satisfactory evidence, and if the case depended upon the evidence of the wife alone, any court might well hesitate to uphold the gift. But on the previous day (Sept. 30th) Edwards wrote the following letter addressed to the plaintiff:

" Friend Jim — Should I not survive from the effects of the operation about to be performed on me at St. Luke's Hospital, this is my last will and request that you will take charge of my body and have it placed in my family plot in Greenwood Cemetery, and also that you will take full charge of all my personal effects of every kind, and to have and hold the same unto yourself, your heirs and assigns forever. You will find my papers and all my accounts in the box.

                " C. H. EDWARDS."

This was enclosed in an unsealed envelope, addressed to the plaintiff and placed by Edwards in the bureau in the room occupied by him in plaintiff's house, where it was found about a week after his burial by plaintiff's wife and his aunt, both of whom proved the handwriting to be that of the donor. The genuineness of this letter was not disputed upon the trial. While standing alone it would not have been sufficient to establish the gift, it furnishes strong confirmation of the evidence of plaintiff's wife as to the gift, and leaves no reason to doubt that it was made as she testified. It was competent as corroborating evidence, just as the oral or written declarations of the donor previously made would have been, showing the intention to give and thus corroborating the evidence as to the actual gift subsequently made. I have found no authority condemning such evidence. In all cases where probate of a will is contested on the ground of undue influence, fraud

incompetency or forgery, the previous declarations or state-
ments, in any form, of the testator showing an intention in
harmony with the instrument offered for probate, have always
been held competent — not as sufficient standing alone — but
as corroborating the other evidence offered by the proponent.

The gift was consummated by the delivery of the books, and
no other formality was needed to constitute the actual delivery
of the bank deposit needful to vest the possession and title in
the donee.   In savings banks in this state such deposit-books
are issued as evidence of the indebtedness of the banks.   With-
drawals of deposits are entered in the same books so that the
deposit-book always, with the addition of any interest, shows
the actual state of the accounts between the depositor and the
bank, and the whole indebtedness of the bank.   It answers
the same purpose in the case of a savings bank that is answered
by a certificate of deposit in the case of other banks.   The
decisions are not entirely harmonious as to the sufficiency of
the mere delivery of such deposit-books to constitute a valid
gift, either *inter vivos* or *causa mortis.*   But the general rule
in England and in this country, and particularly in this state,
is that any delivery of property which transfers to the donee
either the legal or equitable title, is sufficient to effectuate a
gift; and hence it has been held that the mere delivery of
non-negotiable notes, bonds, mortgages, or certificates of stock
is sufficient to effectuate a gift.   (2 Redfield on Wills, 312;
*Westerlo* v. *De Witt*, 36 N. Y. 340 ; *Champney* v. *Blanchard*,
39 id. 111; *Penfield* v. *Thayer*, 2 E. D. Smith, 305 ; *Walsh*
v. *Sexton*, 55 Barb. 251; *Johnson* v. *Spies*, 5 Hun, 468;
*Allerton* v. *Lang*, 10 Bosw. 362; *Camp's Appeal*, 36 Conn.
88; *Bates* v. *Kempton*, 7 Gray, 382; *Chase* v. *Redding*, 13
id. 418; *Pierce* v. *Boston Savings Bank*, 129 Mass. 425;
*Tillinghast* v. *Wheaton*, 8 R. I. 536; *In re Mead*, L. R. [15
Ch. D.] 651; *Moore* v. *Moore*, L. R. [18 Eq.] 474.)

But the learned counsel for the appellants calls our attention
to one of the by-laws of the bank printed in the deposit-book
in question in this action, and claims that the delivery was not
effectual without the written order of the donor.   The by-law

is as follows: " Drafts may be made personally or by the order, in writing, of the depositor, if the bank have the signature of the party on their signature-book, or by letters of attorney duly authenticated; but no person shall have the right to demand any part of the principal or interest without producing the pass-book, that such payments may be entered therein. If the person giving the order or power of attorney cannot write, he or she must make his or her mark, in the presence of a subscribing magistrate or some one whose signature is known at the bank, and any person presenting said order or power of attorney must be known or made known to the bank, as the one authorized to receive the money."

This by-law requires an order or power of attorney when some one seeks to draw money for the depositor or the depositor's money. But the depositor can draw the money without making an order simply by the presentation of the deposit-book, and so can any owner of the book. Suppose the plaintiff had purchased the book, and had thus become the absolute owner thereof; he could have drawn the money as owner on presentation of the book, and the bank could not have required as a condition of payment that he should procure a power of attorney or an order from one having no interest, legal or equitable, in the deposit. The owner in such a case should produce satisfactory evidence of his ownership of the book, and if the bank refused to pay he would be obliged to establish such ownership by any competent evidence, and nothing more; and his rights as purchaser would be no greater than his rights as donee. He has the same right to enforce a payment that he would have had if he had been the donee of any non-negotiable chose in action, or a certificate of deposit, or unindorsed note. He could establish his right to payment in such a case by any proof showing that he was the absolute legal or equitable owner.

The claim is also made that the donor could not make the gift in the apprehension of death from a surgical operation to be performed in the future to which he intended voluntarily to expose himself. But, without taking a broader view, death

from a surgical operation made necessary by a present disease, is, in a proper sense, death from the disease, and the gift may in such case be upheld as made in the apprehension of death from the disease.

We now come to the question, was the gift invalid because the donor did not die of the same disease from which he apprehended death?

Gifts *causa mortis* as well as gifts *inter vivos* are based upon the fundamental right everyone has of disposing of his property as he wills. The law leaves the power of disposition complete, but to guard against fraud and imposition, regulates the methods by which it is accomplished.

To consummate a gift, whether *inter vivos* or *causa mortis*, the property must be actually delivered and the donor must surrender the possession and dominion thereof to the donee. In the case of gifts *inter vivos* the moment the gift is thus consummated it becomes absolute and irrevocable. But in the case of gifts *causa mortis* more is needed. The gift must be made under the apprehension of death from some present disease or some other impending peril, and it becomes void by recovery from the disease or escape from the peril. It is also revocable at any time by the donor, and becomes void by the death of the donee in the life-time of the donor. It is not needful that the gift be made *in extremis* when there is no time or opportunity to make a will. In many of the reported cases the gift was made weeks, and even months, before the death of the donor when there was abundant time and opportunity for him to have made a will. These are the main features of a valid gift *causa mortis* as they are set forth in many text-books and reported cases. (Just. Insts. Lib. 2, tit. 7, § 1; Mackeldey's Roman Law, § 793; California Civil Code, §§ 1149, 1151; 1 Roper on Legacies, 26; 2 Schouler's Personal Property, 157; 2 Kent's Com. 444; Story's Eq. Juris. §§ 606, 607; Pomeroy's Eq. Jur. § 1146; *Grymes* v. *Hone*, 49 N. Y. 17; *Williams* v. *Guile*, 117 id. 343; *Basket* v. *Hassell*, 107 U. S. 602.)

Counsel for the appellants would add one more prerequisite

to an effectual gift, and that is that the donor, when the gift has been made in the apprehension of death from disease, must have died of the same disease, and he calls our attention to expressions of judges to that effect. I have examined all the cases to which he refers, and many more, and find that these expressions were all made in cases where the donor died from the same disease from which he apprehended death when he made the gift, and that none of them were needful to the decisions made. The doctrine meant to be laid down was that the donor must not recover from the disease from which he apprehended death. I am quite sure that no case can be found in which it was decided that death must ensue from the same disease, and not from some other disease existing at the same time, but not known.

There is no reason for this additional prerequisite. The rule is that the donor must not recover from the disease from which he then apprehended death. If he recovers the gift is void; if he does not recover, and the gift is not revoked, it becomes effectual. In this case the condition was that if he did not recover from the consequences of the operation and return from the hospital the gift should take effect. That was a perfectly lawful condition for him as the owner of the property to impose, and no reason can be perceived for refusing to uphold a gift made under such circumstances. A donor may have several diseases, and may, in making a gift, apprehend death from one and not from the others, and shall the gift be invalid if before he recovers from the disease feared he dies from one of the other diseases? In such a case it might be, and generally would be, difficult, if not impossible, to tell what share any of the diseases had in causing the death. No medical skill could ordinarily tell that the donor would have succumbed to the disease feared if the other diseases had not been present. Here the immediate cause of death appeared to be heart disease, and the autopsy did not disclose that there was any connection between the hernia or the operation and the heart disease. But who could tell that the death would have ensued from the heart disease at that particular time but

for the operation? No medical skill can tell that the shock from the operation, and the debility and disturbance caused thereby did not hasten death; and the death, therefore, in a proper sense, may have ensued, and probably did ensue from both causes.

Sound policy requires that the laws regulating gifts *causa mortis* should not be extended, and that the range of such gifts should not be enlarged. We, therefore, confine our decision to the precise facts of this case, and we go no further than to hold that when a gift is made in the apprehension of death from some disease from which the donor did not recover, and the apparent immediate cause of death was some other disease with which he was afflicted at the same time, the gift becomes effectual.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.