## No. 9125.

## BRIND, ADMINISTRATOR *v.* INTERNATIONAL TRUST CO.

1. GIFT CAUSA MORTIS—*Conditions*, Prescribed. Finding of sustained.

2. —— *Doctrine of not to be Extended.* Sound policy requires that the range of such gifts should not be extended.

3. —— *Anticipated Demise—Cause—Evidence.* Where the alleged donor evidenced the gift by a writing directed to the depositor thereof, and requiring the delivery of the several articles which were the subject of the proposed donation to persons named, "in the event of my death as a result of"— a surgical operation mentioned. Held that the writing was controlling evidence of the contemplated peril which dictated the donation.

4. —— *Death from other Cause than that Anticipated.* The peril contemplated by the alleged donor, and moving her to the donation, was by her expressly declared to be ·a surgical operation to which she proposed to submit. But the operation never took place, and the subsequent death of the lady resulted from the malady to which the operation was to be directed, as the remedy. *Held* that the gift never became effective.

5. —— *Reaffirmation after Surviving the Peril.* The donor being advised by her counsel of the probable invalidity of the donation, and the importance of further action, if she desired that it should be effectual, declared that she "would think of it," and took no further action. Previous expressions of the lady that she "should like those things to go as listed to my friends," were rejected.

*Error to Denver District Court, Hon. George W. Allen, Judge.*

Mr. THOMAS WARD, JR., and Mr. W. E. RICHARDS, for plaintiff in error.

Messrs. HUGHES & DORSEY, E. I. THAYER and W. M. BOND, JR., for defendant in error and intervenors.

Burke, J.

THIS is an action in replevin by J. Fritz. Brind, administrator with the will annexed of the estate of Maria E. Brind, deceased, plaintiff, against the International Trust Company, defendant, to recover of the defendant certain jewelry, deposited with it by the decedent, for delivery, under certain conditions, to Mrs. U. S. Hollister, et al., intervenors, who now claim the property.

Demurrers to the answer of the defendant and the petitions of intervention were overruled. Answers and rep-

lications were filed, and the cause was tried to a jury. Plaintiff moved the court to direct a verdict in his favor, which motion was denied. The jury found for the intervenors. Motion for new trial was overruled, judgment was entered in favor of the intervenors for possession of the property, and the cause comes here for review on error.

It appears that on August 18, 1914, Maria E. Brind, then the wife of the plaintiff, addressed to defendant the following communication:

"Gentlemen:

In view of the fact that I am about to undergo a very serious surgical operation for the removal of a tumor, and in anticipation of the fact that said operation may result in my death, I hereby deliver into your hands the following mentioned articles of personal jewelry, enclosed separately, one in each box, each article as a gift *causa mortis* to the person for whom it is mentioned, viz., to-wit:

(Here follows a description of each article and the name of the person to whom it is to be delivered.)

The same to be delivered by you to each of said persons in the event of my death as a result of said surgical operation. In the event I do not die from said operation, then each and all of said articles of jewelry to be returned to me on demand. (Signed) Marie Evaline Brind."

This document, with the jewelry, was delivered to the defendant, which receipted therefor and agreed to act thereunder. It was drawn by decedent's attorney, and executed after consulting with him and upon his advice. At the time of the death of said Maria E. Brind, November 8, the property was still in the possession of the defendant. It is contended by the plaintiff that his wife did not die as a result of the contemplated operation; hence the gift is invalid, and the property must be returned to him, as administrator. Defendant and intervenors assert that she did die as a result of said operation, or as a result of said operation, and the malady for which it was to be performed; further, that prior to her death she re-affirmed the gifts

made by the instrument, and never demanded the return of the property. There is no serious conflict in the evidence. It appears therefrom that on the date of the execution of the instrument in question decedent went to a hospital in Denver for the purpose of the operation therein contemplated; that on the following day an incision was made by the surgeon in charge of the case, and such a condition discovered as convinced him that the contemplated operation could only result in Mrs. Brind's death, whereupon the wound made by the incision was sewed up. The incision made was not a serious operation and had perfectly healed, and from it she fully recovered. About September 8, following, she was sufficiently recovered to leave the hospital and return to her home. The direct cause of her death was the original ailment for which the operation was contemplated. She was fully informed by the surgeon that the contemplated operation had not been performed, and understood the reasons why. She visited the office of the defendant after leaving the hospital, and in the latter part of October made visits down town to take X-ray treatments. There is testimony that she said, after leaving the hospital, "I think this is fatal, and I will never get over it;" that she said to one of the witnesses, "In case of my passing away, I should like those things to go, as listed, to my friends;" that the disposition which she made was the most satisfactory to her; that the jewelry was in the vault of the trust company, and was disposed of by her, and was no longer her property; that she wanted something done in order to insure that the articles would go to the particular individuals mentioned.

H. V. Johnson, attorney for decedent, who drew the instrument in question, testified that he advised her concerning her rights to make what the law called a gift *causa mortis*, which might be made by a person in imminent danger of death; that if the death took place the gift would stand; that if the death did not occur she could get possession of the things she had given them; that about Novem-

ber 3, when Mrs. Brind was quite ill, he visited her at her home. She spoke of her husband, and of a will, and said, "I hardly know what to do about it, but I am particularly anxious about those matters with the International Trust Company." She said she was feeling very badly. It seems she had executed a will, which her attorney told her she had a right to change, and advised her not to wait too long; also that if she wished to make any change in the document deposited with the defendant he was at her service. She then said, "Well, I will think about it, and if I determine to do anything I will call on you." He reminded her that the instrument which she had executed, and under which she had delivered the articles to the trust company states, that, whereas she was about to undergo a dangerous operation for a tumor and that she might die therefrom, and, as a certain operation had been performed in August, "as I was informed by her, and she had not died immediately after the operation, and was still living, that there might possibly be some question about the validity of the gift." Later, about November 5, he communicated by telephone with Mrs. Brind, through a third person, and was advised that if Mrs. Brind wanted him for any purpose later she would call. This she never did.

The verdict of the jury and the judgment of the court upheld this transaction as a valid gift *causa mortis*. If such determination was erroneous, plaintiff's motion for a directed verdict should have been sustained and the judgment entered by the trial court cannot stand.

"A gift *causa mortis is subject to the conditions* (1) that it must be made in contemplation, fear or peril of death; (2) the donor must die of the illness or peril which he then fears or contemplates, and (3), the delivery must be made with the intent that the title shall vest only in case of death."

*O'Neill v. O'Neill*, 43 Mont. 505-511; 117 Pac. 889, Ann. Cas. 1912 C. 268.

That decedent executed the instrument and made the

delivery of the property (if delivery was made) in fear of death, is established by her signed statement and is not disputed.

We think it clearly appears from the evidence that there was a delivery of the property in question. The articles passed into the possession of the defendant, which receipted for them and agreed to execute the gift. The evidence shows that the box was set apart by the trust company and the keys retained by the company. Such a delivery to another for the use of a donee is a sufficient delivery to uphold a gift *causa mortis*.

*Whitman v. Pickens*, 33 Colo. 484, 81 Pac. 299; *Connor v. Root*, 11 Colo. 183-190, 17 Pac. 773.

The first and third essentials of a gift *causa mortis*, as laid down in O'Neill v. O'Neill, supra, being thus established, there remains for consideration the second—Did Mrs. Brind die of the illness or peril which she feared or contemplated at the time of the execution of the instrument in question?—(not as erroneously and indefinitely stated in the brief of counsel for defendant and intervenors, Did she die "of an ailment or peril?")

There can be no better guide for determining just what was the illness or peril which Mrs. Brind feared or contemplated than reference to the instrument which she herself signed and upon which the gift was based. In that instrument she refers only incidentally to the illness or malady for which an operation was to be performed. From a perusal of the writing it is very evident that the cause of her immediate dread, the peril in view of which she made the gift, was the operation itself. She says, "In anticipation of the fact that *said operation* may result in death." Further, she directed that these gifts were to be delivered "in the event of my death *as a result of said surgical operation. In the event I do not die from said operation,* then each of said articles of jewelry to be returned to me on demand." It seems to us impossible to read this document and come to the conclusion that at the time of its execution

the mind of Mrs. Brind was running ahead or beyond the result of the operation itself, or was taking into consideration any possibility of death from her original malady. That she did not, in fact, die as a result of the said surgical operation seems to us, from the evidence, beyond question. The slight operation or incision which was, in fact, performed had nothing to do with her death; she unquestionably died as a result of her original malady; her death was in no way connected with the operation she then contemplated, or with any operation.

The contention that the fact that Mrs. Brind died of the contemplated peril was settled by the verdict of the jury, cannot be upheld. There is no evidence to support it, and the jury was not limited to that question by the instructions, but permitted to consider whether she died of her original disease and the operation.

The principal case relied upon to sustain the existence of this second essential to a gift *causa mortis is Ridden v. Thrall,* 125 N. Y. 572; 26 N. E. 627, 11 L. R. A. 684, 21 Am. St. 758. By its very language it is inapplicable. The court says: "We therefore confine our decision to the precise facts of this case, and we go no further than to hold that when a gift is made in the apprehension of death from some disease from which the donor did not recover, and the apparent immediate cause of death was some other disease with which he was afflicted at the same time, the gift becomes effectual." This authority would be applicable only in case Mrs. Brind had not recovered from *the operation* at the time she died from the tumor. Shall we stretch this rule to cover the instant case where there *was* a recovery from the operation? Counsel's own authority, just quoted, answers the question thus: "Sound policy requires that the laws regulating gifts *causa mortis* should not be extended and that the range of such gifts should not be enlarged."

On the question of Mrs. Brind's re-affirmation of the gifts after her recovery from the operation, it is sufficient to point out that this contention is fully answered by the testi-

mony of her attorney, Johnson. From him she learned of the probable invalidity of the gifts by reason of her recovery from the operation, of the importance of further action in case of her conclusion to re-affirm them, and of the availability of his services to that end, and from him we learn her decision, "Well, I will think about it and if I determine to do anything I will call on you." In view of this undisputed testimony, it must be held that her statements of an intention that, notwithstanding her recovery from the operation, these gifts should go to intervenors, were nothing more than statements of what she then contemplated she would do, but what she herself well knew she had not done.

We therefore conclude that the second essential element of a valid gift *causa mortis*, as laid down in *O'Neill v. O'Neill, supra,* i. e. that the donor must die of the illness or peril which he then fears or contemplates, was absent in this case; that Mrs. Brind's recovery from the operation revoked the gifts; that there was no re-affirmance by her; that plaintiff's motion for a directed verdict should, therefore, have been sustained. The judgment of the trial court is reversed, with directions to enter judgment herein in favor of the plaintiff.

Garrigues, C. J., and Teller, J., concur.