Anthony J. Di Giovanna, J.
The decedent, Mike Lawrince, had been a depositor since December 3,1941 in the Dime Savings Bank of Brooklyn and since December 3, 1941 in the Brooklyn Savings Bank. It is the plaintiff’s claim that on April 10, 1958 the decedent signed, transferred, set over and gave her the bankbooks and the money on deposit as a gift to be hers forever *21 after; that she accepted and retained the bankbooks as her property and that she is now the owner and holder of the bankbooks and is entitled to the withdrawal of the moneys on deposit.
Mike Lawrince died intestate on May 21, 1958 with no known heirs.
This action is vigorously opposed by the Public Administrator who claims that pursuant to section 136-t of the Surrogate’s Court Act he is the only one authorized to take possession of, collect and secure the goods, chattels and personal property and credits of the intestate. It is his claim that a gift was in fact not made by the decedent to the plaintiff and that he, as Public Administrator, is entitled to collect the moneys or, in any event, the plaintiff failed to prove by convincing evidence that a gift was made.
At the trial the plaintiff produced as a witness on her behalf one Mrs. Blanche Yanchis who testified that she visited in the apartment occupied by the plaintiff and Mike Lawrince on April 10, 1958, and that in her presence the decedent handed the two bankbooks to the plaintiff and told her that it was hers to keep as her property and that it was hers to do with as she pleased. Extended cross-examination by the attorney for the Public Administrator did not change this testimony in the slightest degree. The court had the opportunity of observing Mrs. Yanchis upon the witness stand and, on its own, put her through a most searching and comprehensive cross-examination in order to ascertain whether she was telling the truth. The court was convinced that she was and so finds that Mrs. Yanchis told the truth concerning the transaction between the decedent and the plaintiff. It is clear to the court that both the plaintiff and Mrs. Yanchis are not well educated nor possessed of the most gracious social deportment." Nevertheless it was evident that the testimony of both was honest and above board. Mrs. Yanchis is a middle-aged married woman with a family of her own, who lives in the same apartment house with the plaintiff. It is her testimony that during a period of nine years she was accustomed to frequently visit with the plaintiff and Mr. Lawrince and to spend time with them; that she observed their manner of living; that she knew that both were unmarried people but that both occupied the same bedroom. She said that she saw the plaintiff prepare food for Mr. Lawrince and herself, clean the house, take care of the clothing of Mr. Lawrince and do such other things as are commonly done by a wife on behalf of a husband to secure to him the comforts of married life.
*22 The court, on its own behalf, rigidly cross-examined Mrs. Tanchis but found no reason to disbelieve or discredit any part of the testimony given by her. When the plaintiff herself was upon the witness stand, the attorney for the Public Administrator opposed testimony by her by reason of the restrictions placed upon her by section 347 of the Civil Practice Act. He, nevertheless, cross-examined her with respect to transactions and matters which bordered closely upon communications or transactions between the parties. On several occasions, where the court sought to ask questions, he objected and the objections were sustained on the basis that those objections transcended the right of testimony by the plaintiff as provided in section 347. Nevertheless, on cross-examination he asked the plaintiff whether it was not a fact that during, a 9 or 10-year continuous period she did live and sleep with Mike Lawrince. Motivation and purpose of a gift such as plaintiff claims must be established before the court can decide whether it was sufficient to induce the deceased'to make such a gift. It appeared that for a year prior to the residency at the present address the plaintiff and the decedent cohabited together more or less at 21 Scholes Street, Brooklyn, where the plaintiff kept and maintained an apartment as tenant. The attorney for the Public Administrator, in objecting to a question asked by the court, stated upon the record that he did not raise any issue as to the fact that the two had resided together in an apartment for a period of 9 or 10 years, but said that he denied having any knowledge as to whether cohabitation and intimacy between them had in fact taken place. It was his purpose, through a most searching cross-examination of the plaintiff, to establish the fact that the decedent was merely a boarder and not one with whom the plaintiff had in fact had more than merely the relationship of landlord and boarder.
I find, however, that the testimony clearly establishes that for a period of 9 or 10 years the plaintiff extended herself to provide to Mike Lawrince all of the comforts of married life without the benefit of a marriage ceremony; that she provided him with tjie preparation of food, with care of his clothing, with cleanliness of the apartment, and, as shown by the answer given to the attorney for the Public Administrator’s question, the comforts of connubial bliss.
The plaintiff is 56 years of age; the decedent was 66 years of age at the time of his death. The plaintiff does not present an overbright picture of mentality but appears to be a clean, simple woman who undertook to and did provide Mr. Lawrince with care and affection during a 10-year period of his life when he *23 most needed it. The moneys in the bank were accumulated by him from his earnings and, during the latter period of his life, from a pension fund. During a great portion of the period, these two people lived together and the expenses of the apartment were paid by both with moneys kept in a box for that purpose. Mr. Lawrince, having reached the age of 66, according to the testimony, felt that there was no sense in his making the necessary trips to his savings account to withdraw money and, according to the testimony, presented the bankbooks to the plaintiff so that she could own the money and do with it as she pleased for the purpose of taking care of the apartment and the necessary comforts of both. There are no other heirs known to exist. The decedent apparently was alone in this world except for the plaintiff.
To me the testimony in this case meets the test required in these cases. The plaintiff has established her case by a fair preponderance of the evidence. Her testimony and the testimony of Mrs. Yanchis is clear and convincing proof that Mr. Lawrince did present the bankbooks to the plaintiff, and when he did so, he did it with the intention of making an outright gift to her. The court finds that it was his intention to do so because of the many years of service given to him by the plaintiff to his benefit and his love and affection for her.
The minor variances in the testimony by the plaintiff and the records and deposition presented by the Public Administrator do not affect the result one whit. The questions as to whether the bankbooks were in one part of the dresser or in another, and as to other matters appearing in the deposition which seem to vary somewhat with the testimony at the trial are of slight consequence. The questionnaire, signed by the plaintiff when she visited the office of the Public Administrator, was completely filled out by a clerk in the office of the Public Administrator and then the plaintiff was asked to sign it. As indicated above, the court did not regard the plaintiff as an overly bright person and the questions were so worded that they could confuse a person of her mentality and lack of education. Under the circumstances, I must find that the plaintiff would be entitled to a judgment declaring that the bankbooks are hers.
In Baxter v. Gillen (179 App. Div. 902) it was stated: “ It is settled in Hew York that delivery of a savings bank book with the intent to pass title is a consummated gift. (Ridden v. Thrall, 125 N. Y. 572; 12 R. C. L. ‘ Gifts,’ § 23.) This was not given on condition of a future marriage. 5i * * (See Williamson v. Johnson, 9 L. R. A. 277; 62 Vt. 378.) Plaintiff was entitled to a finding of a gift consummated on March 19, 1916.”
*24 The Public Administrator has advanced the argument that, because the bankbooks contain a clause which reads substantially in each case as follows: “No gift assignment or transfer of all or any part of any account need be recognized by the bank unless the bank has written notice thereof in form satisfactory to it and a memorandum thereof has been entered by the bank in the passbook.”, the plaintiff is not entitled to the money. That is not the law. If that were so, a bankbook could never be pledged as collateral security nor disposed of by way of a gift. As was said in Ridden v. Thrall (125 N. Y. 572) at page 578: “This by-law requires an order or power of attorney when some one seeks to draw money for the depositor or the depositor’s money. But the depositor can draw the money without making an order simply by the presentation of the deposit-book, and so can any owner of the book. Suppose the plaintiff had purchased the book, and had thus become the absolute owner thereof; he could have drawn the money as owner on presentation of the book, and the bank could not have required as a condition of payment that he should procure a power of attorney or an order from one having no interest, legal or equitable, in the deposit. The owner in such a case should produce satisfactory evidence of his ownership of the book, and if the bank refused to pay he would be obliged to establish such ownership by any competent evidence, and nothing more; and his rights as purchaser would be no greater than his rights as donee. He has the same right to enforce a payment that he would have had if he had been the donee of any non-negotiable chose in action, or a certificate of deposit, or unindorsed note. He could establish his right to payment in such a case by any proof showing that he was the absolute legal or equitable owner.” Furthermore, a rule and regulation does not require anything except written notice satisfactory to the bank. It does not say that such written notice has to be made necessarily by the depositor. In my opinion, service of a certified copy of the judgment to be entered herein, upon the bank, constitutes the written notice required under the rule and regulation.
In Matter of Welsh (49 N. Y. S. 2d 591) testimony adduced from two sisters of the respondent showed that the decedent, in the presence of the respondent and those two sisters, delivered the passbook to the respondent with words denoting an intent of present gift. In spite of his advanced age and his inability to read or write, it was testified that the decedent was self-opinionated and mentally alert. It further appears that *25 although the respondent was not in good health she had lived with and cared for the decedent approximately two years immediately prior to his death. The court said, at page 592: ‘ ‘ A gift of moneys on deposit in a savings bank account may be effectuated by a delivery of the passbook on such account. Ridden v. Thrall, 125 N. Y. 572, 26 N. E. 627, 11 L. R. A. 684, 21 Am. St. Rep. 758; Baxter v. Gillen, 179 App. Div. 902, 165 N. Y. S. 1076; Matter of White’s Estate, 148 Misc. 740, 266 N. Y. S. 765. The witnesses who testified in behalf of respondent waived their claims to certain property the subject of other asserted or attempted gifts allegedly made to them, in order to remove their disqualifications under Section 347 of the Civil Practice Act as witnesses in behalf of the respondent to such transaction. The uncontradicted testimony established and the Court determines that the decedent made a present valid gift of the proceeds of said bank account on the date alleged. Ridden v. Thrall, supra; Baxter v. Gillen, supra.”
In Matter of McCredy (72 N. Y. S. 2d 219, affd. 274 App. Div. 363) it appeared that the only direct testimony as to the alleged gift of bank accounts was that of a neighbor of the decedent who testified that in his presence the decedent said to his nephew that he gave him the bankbooks. The court said:
‘ ‘ It therefore becomes the duty of this Court first to determine whether the transaction testified to by the witness Byrnes actually took place. The witness made a good appearance on the witness stand and is absolutely uninterested in the litigation in question. His reputation has not been attacked successfully and the fact of the delivery of the pass books in question is corroborated by the testimony of his wife as well as that of the members of the family of the petitioner [pp. 221-222]. * * *
“It is well established that delivery of the pass books of a savings deposit unaccompanied by any written assignment is sufficient to bring about their transfer if accompanied by sufficient evidence to make up the balance of the elements of a gift. Ridden v. Thrall, 125 N. Y. 572, 26 N. E. 627,11 L. R. A. 684, 21 Am. St. Rep. 758 ” (p. 223).
The same results were reached in Matter of Hackett (113 N. Y. S. 2d 688).
In Hoffman v. Brown (188 Misc. 262, 263-264 [App. Term, 1st Dept.]) it is said as follows:
“The evidence of disinterested witnesses clearly established that the decedent, acting on his own accord, fully recognizing the valuable services rendered to him by the plaintiffs for many *26 years past, gave them his bank books and the proceeds thereof, as compensation for such services which were to be continued up to the time of his death. * * *
“ Bank books, as choses in action, have been made assignable by statute. Such an assignment may be effected by parol. A bank book may be assigned by mere delivery, without a writing. (Ridden v. Thrall, 125 N. Y. 572, 579; Matter of Adler, 107 Misc. 574, affd. 191 App. Div. 40; Loucks v. Johnson, 70 Hun 565.) It was not incumbent on plaintiffs to assert their claim against the bank during the four months that intervened between the delivery of the bank book to them and the death of the decedent.”
Regarding the contention of the Public Administrator that the plaintiff has failed to establish her case by a fair and convincing proof, in Matter of Depew (259 App. Div. 822 [2d Dept.]), the court said: “ While the burden of proof was upon the appellant to establish a gift inter vivos, she was only required to establish the gift by a fair preponderance of the evidence. (McKeon v. Van Slyck, 223 N. Y. 392.). The finding of the court below that she had failed to establish a gift is against the weight of the evidence when such evidence is considered against the background of love and affection concededly had for the appellant by the decedent, and when weighed in connection with his oft-repeated intention to make her the object of his bounty. ’ ’
A point has been made in the Public Administrator’s brief that the validity of a gift has never been upheld in a case wherein the testimony of only one corroborating witness is offered. On the other hand the brief bitterly attacks this type of gift on the ground that in all cases corroborating witnesses are “planted” to support the plaintiff’s claim. This type of argument is not factual. There are many cases which never reach the state of litigation in which cases are held to be valid even where no corroborating proof has been offered because the facts in those cases speak for themselves. When corroborating testimony is required and a witness is available then it is proper to produce such testimony. In this case the court finds that Mrs. Yanchis was present when the gift was made and believed her testimony after having subjected her to rigid cross-examination. There is no reason to apply cliche rules of law merely because she was the only one present when the gift was made. It is sufficient if the court believed the testimony and believed that her testimony proved the plaintiff’s claim by a convincing margin.
*27 In this ease there was a claim by the Public Administrator that certain answers given by the plaintiff to questions put to her by a clerk in his office differed from her testimony at the trial. It was the claim of the plaintiff, and the court believed her, that she did not write the answers on the paper. She further claimed that the answers put on the paper differed from those given by her to the clerk. The clerk is still in the employ of the Public Administrator and should have been called as a witness by him in support of the contention that the plaintiff had lied on the witness stand. The position was taken by counsel for the Public Administrator that the burden was upon the plaintiff to have called this witness. As far as this court is concerned the plaintiff has sustained her burden with her own testimony. The failure of the Public Administrator to have produced a clerk in his employ who might have offered testimony which could have contradicted the plaintiff’s testimony is such as to give the right to the court to give greater weight to the testimony of the plaintiff on the points that might have been contradicted or varied. Having undertaken to disprove the plaintiff’s claim by offering on the defendant’s case testimony by way of documentary evidence to contradict the plaintiff’s claim, the Public Administrator could no longer sit back and be content without calling the clerk as a witness in his behalf. Furthermore, the Public Administrator having interposed a counterclaim, the burden was upon him to sustain his right to judgment on the counterclaim and not upon the plaintiff to defeat that counterclaim.
Under the circumstances the court directs judgment in favor of the plaintiff against the two banks for the amount of money on deposit, together with the accrued interest thereon, and with interest in each instance to the present date.
The judgment is rendered in favor of the plaintiff against the Public Administrator and the counterclaim of the Public Administrator is dismissed, with appropriate taxable costs. Let judgment be settled on notice.