Robert W. Sloan, J.
The petitioner here claims the decedent’s 1958 automobile to be his by reason of a gift causa mortis; and asks that the administrator be directed to execute and deliver the registration certificate to him.
The decedent, a widower 62 years of age, died intestate on September 17, 1958. His distributees are a brother and a niece with whom he had, at best, but casual relations during the later years of his life. He. made his home with a brother-in-law, Charles H. McEvoy, the petitioner here, following the death of his wife and until his death. This covered a period of about 9 years. There is some uncertainty as to the original financial arrangement, but for the last years of his life the decedent had *700 a private room in the McEvoy farm residence, the use of a garage for the storage of his antomobile, which he greatly prized, and had holiday meals and occasionally other meals with McEvoy and his housekeeper, Hazel Harris. He paid Hazel Harris for doing his laundry. Whether he paid McEvoy anything is uncertain, but it can be assumed that the arrangement, whatever it might have been, was mutually satisfactory, as the decedent expressed gratitude that McEvoy provided him with a home.
Early in August, 1958 the decedent became ill and thereafter progressively worse until his death. During this period he assumed to know the nature of his malady and that death was certain to result therefrom.
Due to his failing health the decedent terminated his employment on August 29, 1958. Thereafter he drove his automobile each day until the afternoon of September 8, 1958. On this occasion he put the automobile in the garage, locked the garage door, ascended the back stairs to the kitchen with difficulty, and, with prophetic vision, announced to Hazel Harris, who was ironing in the kitchen, and to McEvoy, who was present, that he would never drive the automobile again. He then handed the keys to the automobile and garage to McEvoy and said: “ Charlie, here are the keys. It’s yours.” McEvoy took the keys, thanked the decedent and said he would give the automobile good care. Hazel Harris assisted the decedent up the stairs to his bedroom, and he went to bed. For a few days thereafter he got up, with assistance, and was about the house and yard. Following this period he was unable to leave his room for four or five days. On September 16, 1958 he was taken to the hospital and died the next morning without having revoked the alleged gift.
Following the decedent’s death the unsigned certificate of registration for the automobile was found in a pocketbook folder in or with fishing equipment in the trunk of the automobile which was in the locked garage.
The only evidence of symbolical delivery of the key is the testimony of Hazel Harris, an interested witness. Her testimony is so corroborated by the testimony of disinterested witnesses as to statements of the decedent made before the alleged gift of his intent to make it and thereafter that the gift was an accomplished fact and the automobile no longer his to sell, that I find the evidence of delivery meets all the requirements of the injunction that it should be clear, convincing and satisfactory. (Matter of Sherman, 227 N. Y. 350; Matter of Presender, 285 App. Div. 109; Ridden v. Thrall. 125 N. Y. 572.)
*701 The question remains, however, whether the handing over of keys to the automobile and the locked garage in which it was housed was as perfect a delivery as the nature of the property and the circumstances and surroundings of the parties reasonably permitted. (Matter of Van Alstyne, 207 N. Y. 298.) It is said that the certificate of registration should have been completed, indorsed and delivered, with intent to transfer title. Evidence of such action in conjunction with the delivery of the keys would, of course, add much to the weight of the petitioner’s proof. However, our problem would remain one of the sufficiency of symbolical delivery under all the circumstances. (Matter of Wernick, 110 N. Y. S. 2d 218; Matter of Albert, 68 N. Y. S. 2d 539.)
The decedent was a sick man when he put his car in the garage on the afternoon of September 8,1958. He experienced difficulty ascending the stairs to the kitchen and required assistance to reach his bedroom. For sometime he had entertained the intention to give his automobile to the petitioner. Whether the consummation of such intention by the delivery of the keys was made on sudden impulse or the result of deep reflection before his arrival in the kitchen of the McEvoy home does not appear. However, if he thought of the certificate of registration and the desirability of signing and delivering it to McEvoy, the effort required to unlock the trunk of the automobile and find and complete and sign the certificate was most probably beyond the power and strength of the decedent at that time. His mind was occupied with the depressing obsession of impending death. Clarity of thought and observance of the niceties of title transfers cannot be expected of one in such circumstances. His act in making the gift was a natural one and his motive that of gratitude. His language showed a clear intent to make a gift and the circumstances show that he did what he considered necessary to effectuate that purpose. He surrendered dominion and control to the donee by handing him the keys to the automobile and the locked garage in which it was housed. This symbolic delivery was as perfect as the nature of the property and the circumstances and surroundings of the parties reasonably permitted.
All the requisite elements of a completed gift causa mortis are present here and proven by a fair preponderance of the evidence. Therefore, I find that Charles H. McEvoy is the owner of the decedent’s 1958 automobile and direct that the administrator complete, execute and deliver the certificate of registration to him.
I direct that a decree be entered accordingly.