PFISTER v. HEINS.

(Supreme Court, Appellate Division, First Department. February 4, 1910.)

1. PARTIES (§ 53*)—AMENDMENT.

In an action on a check, defendant's counsel stated that he had been informed that plaintiff had assigned the check to one P., and asked to amend the answer by pleading that plaintiff was not the real party in interest. Plaintiff's counsel then asserted that the assignment was made as collateral security for a debt, and that the assignee was plaintiff's wife, and produced a written consent by plaintiff's wife that she be made a party plaintiff and be bound by the judgment. Defendant's counsel offered such stipulation in evidence, requesting that it be noted on the record, and that the action proceed as though P. was originally named as a party plaintiff. *Held*, that the court properly ordered the complaint amended by making P. a party plaintiff, thus embodying in a formal order what took place on the trial.

[Ed. Note.—For other cases, see Parties, Dec. Dig. § 53.*]

2. SALES (§ 345*)—ACTION FOR PRICE—TITLE.

A seller is bound to tender good title in accordance with his bill of sale as a condition precedent to his right to recover the purchase price in an action at law.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 958; Dec. Dig. § 345.*]

3. SALES (§ 283*)—WARRANTY OF TITLE—INCUMBRANCES.

Willingness on the part of the vendor to allow a deduction of the amount of an incumbrance from the purchase price by the vendee will not satisfy a covenant to convey free of incumbrances.

[Ed. Note.—For other cases, see Sales, Dec. Dig. § 283.*]

4. BILLS AND NOTES (§ 516*)—CHECKS—ACTIONS—SUFFICIENCY OF EVIDENCE.

In an action on a check, evidence *held* insufficient to support a judgment for plaintiff.

[Ed. Note.—For other cases, see Bills and Notes, Dec. Dig. § 516.*]

Appeal from Trial Term, New York County.

Action by George Pfister against Anna Heins, as administratrix, etc., of John P. Heins, deceased. From a judgment for plaintiff, from an order denying a motion for new trial, and from an order

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

granting leave to amend the complaint, defendant appeals. Affirmed in part, and reversed in part, and new trial granted.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

John Hardy, for appellant.

Abram I. Elkus (James C. McEachen and Jesse Weil, on the brief), for respondent.

LAUGHLIN, J.  There is no merit in the appeal from the order allowing plaintiff to amend the complaint by inserting the name of Maria Pfister as a party plaintiff and allowing the pleading otherwise to stand as served.  During the progress of the trial, counsel for the defendant stated to the court that he had been informed that the plaintiff had assigned the check upon which this action is based to Maria Pfister, and asked leave to amend the answer by pleading that plaintiff was not the real party in interest.  It was then asserted by counsel for plaintiff that the assignment had merely been made as collateral security for an indebtedness and that the assignee was the plaintiff's wife. Pending the application, counsel for plaintiff produced an instrument in writing, signed and acknowledged by plaintiff's wife, consenting that she be made a party plaintiff and that she be bound by the allegations of the complaint, by the proceedings had, and by any judgment rendered herein, and authorizing the attorneys and counsel for plaintiff to represent her.  Counsel for the defendant offered that stipulation in evidence, and requested that it be noted upon the record that she was joined as a party plaintiff, and that the action should proceed "in all respects as though she had been originally named as a party plaintiff."  The formal order which the trial justice subsequently initialed and directed entered, and which was filed on the 9th day of February, 1909, was designed to formally make matter of record what had taken place upon the trial with respect to bringing in the original plaintiff's wife, and which would otherwise only be shown in the stenographer's minutes of the proceedings upon the trial.  That order should therefore be affirmed.

The action is brought to recover on a check for $6,990, bearing date October 26, 1907, and drawn by the deceased, John P. Heins, to the order of the plaintiff, George Pfister, on the Fidelity Bank.  It was protested on the 30th of the same month.  The answer put in issue the allegations of the complaint to the effect that the check was made by the decedent and delivered to the plaintiff for value, and alleged, in effect, that the decedent was of unsound mind and incompetent to make the check and received no consideration therefor; that it was wrongfully and fraudulently obtained from him in an attempt to sell to him a saloon business at No. 1399 Fifth avenue, borough of Manhattan, New York, which was absolutely worthless, advantage having been taken of his unsoundness of mind and inability to understand and transact business; that the plaintiff, acting in collusion with one Schultz and the officers and employés of the Bernheimer-Schwartz-Pilsener Brewing Company, obtained the check in an attempt to defraud the decedent by taking advantage of his mental infirmity and

trust and confidence in said Schultz, and selling to him said saloon business, which was worthless, and having him assume a mortgage held by the brewing company on the saloon fixtures and give the management of the saloon to Schultz, thus enabling the latter to profit at the expense of the decedent; that by wrongful and fraudulent representations with respect to the value of the property, and by undue influence, the plaintiff induced decedent to sign certain papers, among which was the check, on the 26th day of October, 1907; that the decedent disappeared on the morning of the 28th day of October, 1907, and either committed suicide or was murdered on that day, and his body was found with a bullet in his brain in the reservoir in Central Park on the 3d day of May thereafter; that the decedent never had the control or management of the business thus attempted to be sold to him, and it remained in the possession of the plaintiff and of said Schultz until the 26th day of December, 1907, when it was sold under a foreclosure of a second chattel mortgage, the existence of which had been concealed from the decedent, for a sum insufficient to pay the amount due on said mortgage; that the terms upon which the decedent was induced to agree to purchase the saloon business and fixtures was for a consideration of $10,800, to be paid by taking the property subject to a first chattel mortgage thereon, on which there remained due the sum of $3,210, and by assuming and agreeing to pay a balance of $600 owing to the brewing company on the liquor tax certificate which was to be assigned to decedent; that the bill of sale tendered to decedent provided that he was to assume and agree to pay the first mortgage for $3,210, which was not in accordance with the agreement, and that by the bill of sale the property was to be free and clear of incumbrances and subject only to said mortgage for $3,210, but that in fact there was an outstanding second chattel mortgage, which was then a lien upon the property, for a considerable sum of money, and upon which the property was subsequently sold as aforesaid; that the saloon was never delivered to the decedent in accordance with the terms of sale, and remained the property of the plaintiff until his title was divested by the foreclosure of the second mortgage; and that the agreement for the sale of the saloon property was never consummated.

Upon the trial the plaintiff introduced in evidence the check and notice of protest, and a note purporting to be made by the decedent for the payment of $45, on demand, to the order of the brewing company, which was dated the 26th day of October, 1907, and another demand note to the order of the brewing company, purporting to be made by the decedent, for the payment of $600, bearing the same date, in which it is recited that the maker has assumed and agreed to pay the amount remaining unpaid on a note made by the plaintiff and held by the brewing company, and an agreement, signed and acknowledged by the decedent, by which he agreed to assume and pay on demand, to the brewing company, an indebtedness of $3,210, with interest, which it is recited was the amount then due and unpaid on the chattel mortgage on the fixtures and stock of liquors in the saloon. The plaintiff also offered in evidence an assignment of certain leases of

part of the building known as No. 1399 Fifth avenue, used as a saloon, in which it was covenanted by the plaintiff, among other things, that the property was free and clear of all mortgages and other incumbrances, except the mortgage for $3,210 held by the brewing company. The check was produced and offered in evidence by plaintiff. It being a negotiable instrument, doubtless, in the circumstances, delivery for a valuable consideration would be presumed in the first instance (sections 35, 50, Negotiable Instruments Law [Consol. Laws, c. 38]; Carnwright v. Gray, 127 N. Y. 92, 27 N. E. 835, 12 L. R. A. 845, 24 Am. St. Rep. 424; Moak v. Stevens, 45 Misc. Rep. 147, 91 N. Y. Supp. 903); but, with the testimony to which reference will be presently made, stricken out, it is doubtful whether there be any evidence in the case to prove that the decedent made the check. The agreement on the part of the decedent to pay the first mortgage and the assignment of the leases were acknowledged, and therefore proved themselves.

The only other evidence with respect to the execution of these papers, or of the check and promissory notes, was the testimony of one Schultz, a broker whose commissions depended upon the result of the litigation, and the secretary of the brewing company and a clerk in its employ, who were stockholders of the brewery. The transactions to which the testimony of these witnesses related occurred at the office of the brewing company on the afternoon of the 26th day of October, 1907, and were concerning a sale of the saloon property by the plaintiff to the decedent and the execution of the papers, and they were both present and participated therein. This testimony tended to show that the papers were executed with a view to consummating the sale; but it was insufficient to establish the delivery of the papers and the consummation of the agreement. It appears thereby that the decedent took the bill of sale; but it was not shown that it was delivered to him by the plaintiff, or by his authority. All of the other papers were left with the clerk of the brewing company, and it was understood that the check was not to be paid in the regular course of business by presentation at the bank, but that it was to be held by him until 1 o'clock on Monday following, being the 28th day of October, 1907, when it was agreed that the decedent was to come to the office of the brewing company with the money and pay the check. The decedent did not keep this appointment, and it is highly probable that he was drowned or shot before the hour specified; for he was residing with his family in the city, and was last seen alive at about 9 o'clock in the morning of that day on Park avenue, at the corner of Seventy-Seventh street, walking in the gutter with his hat drawn down over his eyes and his coat collar turned up, in a rain and hail storm.

His body was found in Central Park reservoir, which I think we may take judicial notice is nearly opposite the place where he was last seen alive, and only a few blocks distant therefrom, on the 3d day of May, 1908, with a bullet in his brain, and with every indication that the body had been in the water during all of the intervening time. The decedent was frequently seen walking around the reservoir in the park, and his appearance and conduct on occasions were quite un-

usual, to say the least.  At times he would walk around the reservoir bareheaded during a rain storm, and at other times would carry an umbrella when the sun was shining.  On one occasion, when he saw a police officer rescuing a person who was attempting to commit suicide by drowning in the reservoir, he said that, if anything happened to him, that is what he would do.  It is not very material whether he committed suicide, or was murdered; but the court, instructed the jury that there was no evidence that he committed suicide.  It also appears by the testimony of the clerk of the brewing company that he intended to apply the proceeds of the check, so far as necessary, to the payment of the second mortgage on the following Monday when the decedent paid the check; but at the time of the execution of the papers, on Saturday, no discharge of the second mortgage had been procured.  The clerk of the brewing company did obtain the execution of a discharge of the second mortgage on the 28th day of October, before 1 o'clock p. m., taking the acknowledgment himself; but the certificate of acknowledgment was never filled out, and the indebtedness secured by the mortgage was never paid.

It appears by the testimony of the holder of the second mortgage that on a day which he describes as the day of the sale of the saloon property a person, a stranger to him, representing himself to be the decedent, inquired concerning the value of the property and the second mortgage, and stated that he intended to buy the property.  This evidence appears to have been open to the objection that the decedent was not identified as the party calling upon the witness.  That objection, however, was not taken; but, giving the evidence full effect, it shows only, at most, that the decedent knew that there was an outstanding second mortgage on the property prior to the sale.  He had a right, however, to assume, when he met the plaintiff later in the day for the execution of the papers, that it had been discharged, especially in view of the recital and covenant in the bill of sale and in the assignment of the leases.  The evidence does not show that the decedent was aware of the fact that part of the proceeds of his check was to be applied to the payment of the second mortgage, or that he agreed to that course.

If this testimony with respect to the execution of the papers still remained in the case and was to be regarded as competent evidence, we are of opinion that it fails to show that plaintiff is entitled to recover.  It does not show a delivery, at least not an unconditional delivery, of the check, and it does show, in connection with the other evidence, a failure of performance on the part of the plaintiff or of tender of performance, in that the second mortgage was not discharged, and by a subsequent foreclosure thereof the title which the plaintiff then had, and which he attempted to sell to the decedent, and for which the check was given, has been divested, thus working a complete failure of consideration.  On this evidence, had the decedent lived and attended at the office of the brewing company, he would have been under no obligation to pay the check until the plaintiff tendered a delivery of the bill of sale and assignment of the leases, and showed that the second mortgage had been discharged.  The duty clearly devolved on the plain-

tiff to tender good title in accordance with the bill of sale, and failure to do so is failure to perform a condition precedent to the plaintiff's right to recover the purchase price of the property in an action at law. Morange v. Morris, *42 N. Y. 48; Ewing v. Wightman, 28 App. Div. 326, 51 N. Y. Supp. 268, s. c. 52 App. Div. 416, 65 N. Y. Supp. 187, affirmed 167 N. Y. 112, 60 N. E. 322; Delaware Trust Co. v. Calm, 195 N. Y. 231, 88 N. E. 53; Bigler v. Morgan, 77 N. Y. 312; Greenblatt v. Hermann, 144 N. Y. 13, 38 N. E. 966; Glenn v. Rossler, 88 Hun, 75, 34 N. Y. Supp. 608, affirmed 156 N. Y. 161, 50 N. E. 785.

If plaintiff concealed from decedent the fact that the second mortgage had not been discharged, and decedent had paid the check, he might have rescinded, and have recovered back the amount paid. Ziehen v. Smith, 73 Hun, 571, 26 N. Y. Supp. 419. Of course, if the decedent agreed that he would advance the money to pay the amount due on the second mortgage, the plaintiff would not be in default in not having it discharged before the execution of the papers or the final interview, which was to be held on Monday; but there is no evidence of such an agreement on the part of the decedent. It has even been held that willingness on the part of the vendor to allow a deduction of the amount of an incumbrance from the purchase price by the vendee will not satisfy a covenant to convey free and clear of incumbrances. Webster v. Kings Co. Trust Co., 145 N. Y. 275, 39 N. E. 964; Zorn v. McParland, 11 Misc. Rep. 555, 32 N. Y. Supp. 770. Perhaps the decedent could not take and retain possession of the property and refuse to pay the check; but in that event he would at least have been entitled to deduct the amount due on the second mortgage, whereas, here, a recovery has been had for the full amount of the check, which, in no view of the case, can be sustained, for the plaintiff, by failing to pay the second mortgage, has put it out of his power to restore the decedent to the right to the enjoyment of the property.

Some slight evidence has been left in the case, tending to show that the decedent, after the execution of the papers at the office of the brewing company and on the same day, was in possession of the saloon; but that is controverted, and it is scarcely sufficient to show an unqualified delivery of possession by the plaintiff to the decedent in consummation of the sale. It appears that the decedent was in the saloon after the execution of the papers on that day, and on the next day, which was Sunday; but the plaintiff was there on both occasions, and there is nothing to show that the decedent was in charge, other than the testimony of a witness to the effect that he was introduced as the proprietor of the place. There is some indefinite testimony to the effect that, after the disappearance of the decedent, the witness Schultz was in charge of the saloon as his manager, and this may be supported to some extent by the averments in the answer; but, on the contrary, there is evidence indicating that Schultz represented the sheriff, who, it is to be inferred from other indefinite evidence, took charge of the business under an attachment issued at the instance of the plaintiff; and there is slight other evidence, which is controverted in part, tending to show that the plaintiff remained in possession of the premises

until after the sale on the foreclosure of the second mortgage; but, whether the plaintiff took possession on the day of the execution of the papers or not, it is manifest on this evidence that he did not retain possession after the hour of his appointment with the clerk of the brewing company to pay the check, and owing to his death no one was thereafter authorized to represent him in retaining possession of the business. Had he lived and taken possession, he could have vacated and surrendered possession at or prior to the time appointed for the payment of the check on account of the failure of the plaintiff to have the second mortgage discharged. Surely, any defense that would have been open to the decedent, had he lived, is open to his administra-. trix. The circumstances of this case require the application of the rule that the plaintiff should, as against this estate, establish his right to recover by a preponderance of clear, satisfactory evidence.

The learned trial court, after receiving this evidence with respect to the execution of the papers at the office of the brewing company, granted a motion made by counsel for the defendant to strike out, as being incompetent under section 829 of the Code of Civil Procedure, and the court made a general ruling striking out all of the testimony of the three witnesses relating to personal transactions with the decedent. It is not an easy task to determine on the appeal, in view of this ruling, what part of the testimony of these witnesses was stricken out, and it is evident that the jurors could not have known. The testimony apparently has all been included in the record before us. The appeal does not bring up for review the ruling of the court in striking out the testimony; for it is taken by the party in whose favor that direction was given. I am of opinion that we must construe the ruling of the court as striking out all the testimony of these witnesses relating to the sale, execution, and delivery of the papers or the delivery of the business. With that evidence out, it is doubtful, as already stated, whether the making of the check is shown; but, if that be sufficiently shown, then it is quite clear that there was a failure of performance on the part of the plaintiff of the duty devolving upon him of tendering a good title, subject only to the first mortgage, for in that view of the case the second mortgage would stand wholly undischarged, and with no evidence even of an intention to pay it from the proceeds of the check.

The learned trial court submitted to the jury only the question of the competency of the decedent to purchase the property, and thereby, in effect, resolved all other questions in favor of the plaintiff. Counsel for the appellant duly excepted to the various rulings of the court, confining the issue to be submitted to the jury to the question of insanity. A sharp issue was presented, for the determination of the jury on conflicting evidence, with respect to the competency of the decedent to know and understand the nature of his act in purchasing this property. The jury may well have considered on this question the testimony which the court struck out. On the issue of insanity a lay witness was permitted, over objection and exception duly taken by appellant, to express his opinion, not as to whether certain acts of the

decedent, related by him upon the stand, impressed him as rational or irrational, but as to whether the decedent was rational or irrational.

It follows, therefore, that the order with respect to bringing in Maria Pfister as a party plaintiff should be affirmed, and that the judgment and other order should be reversed, and a new trial granted, with costs to appellant to abide the event. All concur.