In the Matter of the Estate of ANNA META EHLERS, Deceased.

Surrogate's Court, Bronx County, September 27, 1928.

Surrogate's Court — discovery — court has jurisdiction to determine issue of title — property left to testatrix for life did not pass by will — property in possession of respondent, which was bequeathed to her, cannot be demanded by executor unless necessary to pay debts — gift causa mortis of bond and mortgage is established — gift of money in bank not shown.

In a discovery proceeding in which the answer sets up title to some of the property, the Surrogate's Court has jurisdiction to determine the issue.

In this proceeding to discover property of the testatrix it appears that a watch and diamond which it is claimed belonged to her estate was the property of her husband and was left to her for life with a remainder over. Therefore, that property did not belong to the estate and the proceeding must be dismissed as to it.

An earring in question in this proceeding belonged to the testatrix and unless necessary to be resorted to for the payment of debts passed to the respondent under her will and so the proceeding in reference to that is dismissed.

The evidence shows that the testatrix gave a bond and mortgage to the respondent as agent for the mortgagor. The evidence, therefore, establishes a gift causa mortis and the respondent is entitled to hold the same as trustee for the donee.

The contention by the respondent that she was given $1,500 from the savings bank account of the testatrix is not sustained. It appears that a draft was drawn for $3,000, $1,500 of which the respondent contends was given to her. The evidence does not establish a gift of that amount, and furthermore, it appears that the draft was not presented and paid prior to the death of the testatrix and that the bank book containing the account on which the draft was drawn was not delivered by the testatrix to the respondent with the intention of making a gift of $1,500. On the other hand, the evidence shows that both the bank book and the draft were given to the respondent, not as donee, but as agent of the testatrix to draw $3,000 from the bank for the purpose of depositing it in a checking account and since the agency could be terminated at any time, it was terminated by the death of the testatrix.

PROCEEDINGS under sections 205 and 206 of the Surrogate's Court Act to discover property withheld and information concerning the same.

*William H. Wack,* for the petitioner.

*Goldwater & Flynn,* for the respondent.

SCHULZ, S. The proceeding was for discovery. An answer was interposed which set up title to some of the property, and under the pleadings the Surrogate's Court had jurisdiction to determine this issue. (Surrogate's Court Act, § 206; *Matter of Jacobi,* N. Y. L. J. Aug. 10, 1917; note to sec. 2676 Code Civ. Proc. in report of Revision Commission to Legislature dated Feb. 1, 1914, p. 203.) As to the remainder, special circumstances were alleged which it was claimed entitled the respondent to the possession thereof, and these questions also the court could determine. (*Matter of Akin,* 248 N. Y. 202.)

In the brief submitted on behalf of the executor it is conceded that the watch and the diamond which originally had been in a stud, both belonged to the husband of the decedent, and that by his last will and testament he had bequeathed the same to his wife, the decedent, for her life, and after her death so much as remained, to his and the decedent's brothers and sisters. If this is so, they did not pass by decedent's will. (*Vincent* v. *Rix,* 248 N. Y. 76; *Matter of Ithaca Trust Co.,* 220 id. 437; *Seaward* v. *Davis,* 198 id. 415.) They belong to the estate of the husband and should be delivered to its representative when appointed. At all events they do not form a part of the decedent's estate and cannot be obtained by her executor in this proceeding.

The earring in which the diamond above referred to was set, however, belonged to the decedent at the time of her death, and unless necessary to be resorted to for the payment of debts, passed to the respondent under her will. The general rule is that a will speaks as of the time of the testator's death and passes property then owned by the testator, unless special circumstances exist which indicate a contrary intent (*Brundage* v. *Brundage,* 60 N. Y. 544, 548; *Waldo* v. *Hayes,* 96 App. Div. 454; *Tifft* v. *Porter,* 8 N. Y. 516, 521), or the will itself contains a provision which shows such intent. Thus in *Quinn* v. *Hardenbrook* (54 N. Y. 83) the language used was: " I give, devise and bequeath  *  *  *  all the real and personal estate *I now possess* " (italics mine). In the pending matter there was nothing either in the surrounding circumstances or in the language of the decedent's will which indicated that the general rule should have no application.

So far as the watch, the diamond and the earring setting (there being no claim that the latter is needed for the payment of debts) are concerned, therefore, this proceeding must be dismissed, without

prejudice to the right of a representative of the husband's estate to bring proceedings to obtain the watch and the diamond.

It appears to be conceded that the bond and mortgage for $500 or 2,000 marks was the property of the decedent although in the name of her nephew, and was delivered to the respondent with the intent to make a gift of the debt evidenced thereby to the mortgagor. The delivery of the bond and mortgage to the respondent, as agent of the mortgagor, was sufficient to effectuate that intent. (*Gannon* v. *McGuire*, 160 N. Y. 476; *Hall* v. *O'Brien*, 218 id. 50, 54.) I hold that as between the parties, the respondent holds the same as the representative of and trustee for the donee, and the proceeding with reference thereto is dismissed. This determination is not binding upon the nephew named as mortgagee as he is not a party to this proceeding. I understand, however, that he is of full age and does not dispute the facts. If that is so, the matter may be disposed of readily by his giving a satisfaction piece to the respondent and the latter having the mortgage satisfied of record. It appears that the decedent had two bank accounts, one a thrift account, and the other a checking account. The respondent had been given authority to open the decedent's safe deposit box in which the book of the thrift account was kept, and the decedent had given her a draft on the thrift account for the sum of $3,000. The respondent, acting under the decedent's directions, went to the safe deposit box, obtained the bank book and drew the $3,000. She claims to have had instructions from the decedent to deposit $1,500 of this amount in the decedent's checking account which she has done. The other $1,500 she claims as a gift *causa mortis* from the decedent in appreciation of services rendered by her in taking care of the decedent.

The evidence produced to establish the alleged gift is her own testimony, admitted without objection, the testimony of two other witnesses, and an instrument bearing the signature of the decedent.

The testimony of one of the witnesses is to the effect that upon the occasion when it is claimed the decedent signed the instrument in question, the witness saw her sign two papers, each about the size of a check, and one of about the color of the document in question. The witness, however, did not read the papers.

The testimony of the physician, the other witness, who wrote the draft on the thrift account also adds to the uncertainty of the matter, for he says that the decedent asked him to write a sort of check from the thrift account in the Bronx County Trust Company, that he drew this up for her, that it was signed by her " to be deposited in the Bronx County Checking Department," and that she handed it to the respondent at that time. This was the draft for $3,000. If he is

correct that the draft or the proceeds of the draft were to be deposited in the checking account, this would indicate that at that time, at least, the decedent did not intend to give one-half of the amount thereof to the respondent.

The determination of the facts, therefore, depends largely upon the weight to be given to the respondent's testimony and the writing referred to.

Her testimony, of course, must be considered in the light of her personal interest, and while it has been held that the court may find for the claimant, even if the latter's testimony is uncorroborated, such a circumstance calls for careful scrutiny and examination. (*Matter of Sherman*, 227 N. Y. 350; *Ridden* v. *Thrall*, 125 id. 572.) And this is true, even if the testimony is uncontradicted. (*Matter of Marcellus*, 165 N. Y. 70, 76.) The document, therefore, becomes of great importance.

It consists of a check form of a bank to whose business the trust company in which the decedent had her checking account at the time of her death had succeeded, and is signed in the place where the signature to a check usually appears. Above the signature and over the printed form of the check appear the words " December 24, 1927. In cace I don't get better I want my nice Anna Vagt to have her Keep The 1500 Doller wish I ordered her to bring home from the bank; " and to the left of the signature are the words " for taken care of me." Anna Vagt above mentioned is the respondent and it is conceded that the words quoted are in her handwriting and the contention is that the check form was one of many signed in blank by the decedent and that the respondent wrote the words quoted, above and around the signature. There is no evidence to support this contention unless it is found in the surrounding circumstances and the appearance of the instrument itself.

An examination of the paper discloses that the word " bank " does not fill out the line in which it is found. The two words " the " and " bank " were written on an upward slant. If they had been written on the same level as the other words on the line, to wit, " to bring home from," the word " bank " would have been written over a part of the signature, or if the signature was written afterwards, the signature would have been written partly over the word " bank." The other words " for taken care of me " were not written on the same line as the word " bank," although there was room to write them. If they had been so written, they would cover or have been covered by parts of the signature depending on whether it was written prior or subsequent

to them. In other words, the appearance of the writing is such that it might have been written after the signature, and in such a way as to avoid writing over it. The capital letter " A " in the name " Anna " seems to touch the " a " in the word " bank." Unfortunately, I am unable to determine whether or not one is superimposed upon the other. Again, no explanation is offered as to why the writing on this instrument was put on the face of the check form partly over the printed matter, thus making possible the contention that it was written after the check form had been signed in blank, instead of on the back of the form which was blank.

On the same day that she gave the draft on the thrift account for $3,000, the respondent claims that the decedent gave her a check upon her checking account for $500 in payment for moneys loaned and expended. If she gave the respondent the $1,500 as claimed, out of the moneys drawn from the thrift account, it seems strange that she directed the balance to be deposited in the checking account and immediately drawn against as claimed. A much more natural procedure would have been to direct the respondent to keep $2,000 of the money withdrawn from the thrift account, and deposit the balance, or to deposit the full $3,000 and give her a check for $2,000.

The burden of proving the gift was upon the respondent (*Matter of Housman*, 224 N. Y. 525), and while the evidence does not have to be of a different kind from that required in other cases, and only a fair preponderance is necessary, it must be carefully scrutinized in the light of the fact that one of the parties to the transaction is dead, and it should be clear, convincing and satisfactory. (*Matter of Van Alstyne*, 207 N. Y. 298, 308; *McKeon* v. *Van Slyck*, 223 id. 392, 397; *Ward* v. *N. Y. L. Ins. Co.*, 225 id. 314, 322; *Matter of Sherman supra.*)

To me the evidence in this case does not appear to be of that character. The physical appearance of the instrument and the surrounding circumstances are such as to leave a grave doubt in my mind, and this being so, the burden which is upon the respondent in this matter has not been sustained. (*Tilford* v. *Bank for Savings*, 31 App. Div. 565.)

If, however, I should be in error and the facts warrant a determination that a gift was made, still, under the law, I could not find for the respondent. It is stated that at the time the respondent presented the draft on the thrift account, and the same was honored, and when she deposited $1,500 of the amount drawn in the checking account, and deposited or presented the check for $500 given to her in payment as heretofore stated, the decedent was dead.

I am satisfied that the $500 check was delivered to the respondent, and in the absence of any evidence to the contrary, the conclusion is warranted that it was issued for a valuable consideraticn. (Neg. Inst. Law [Cons. Laws, chap. 38], § 50; *Pfister* v. *Heins*, 136 App. Div. 457, 461; *McGuire* v. *Murphy*, 107 id. 104; *Carnwright* v. *Gray*, 127 N. Y. 92, 98.)

The bank is protected, although it permitted the draft on the thrift account and paid the check on the checking account after the death of the drawer, because it had no knowledge of her death, but the amount paid upon the check must be returned to the estate by the respondent (*Glennan* v. *Rochester Trust & S. D. Co.*, 209 N. Y. 12; *Matter of Smither*, 30 Hun, 632; *Matter of Stacey*, 89 Misc. 88), who, however, may file a claim against the estate for the amount of the check.

The gift of $1,500, assuming that it was made as contended, also failed because the draft had not been paid or accepted before the decedent's death. If the bank book of the thrift account, and the draft or order had been delivered by the decedent to the respondent, or assuming that the fact that she had access to the safe deposit box and took the book out at the direction of the decedent was equivalent to such delivery, and this had been done with the intent to make a gift of $1,500 thereof, it might be that the intended gift could be given effect (*Wetherow* v. *Lord*, 41 App. Div. 413, 416), but here such delivery could not be so construed.

It is evident that if the testimony of the respondent is true, the book and draft were given to her, not as a donee, but as the agent of the decedent to draw the amount of the draft and to make the disposition stated. The decedent could have terminated that agency at any time before the payment of the draft and, as it was not coupled with an interest, her death terminated it as a matter of law. (*Glennan* v. *Rochester Trust & S. D. Co.*, supra; *Matter of Stacey*, supra; *Matter of Mead*, 90 Misc. 263; affd., 173 App. Div. 982; affd., 221 N. Y. 645. See, also, Editorial, N. Y. L. J. July 31, 1928.)

For the reasons stated, I determine that the title to the sum of $1,500, being the amount retained from the moneys received upon the draft, is in the estate of the decedent, and a decree will be made directing the same and the amount received on the check, totaling $2,000, to be paid to the petitioning executor.

Settle decision and decree accordingly.