In the Matter of the Estate of WILLIAM J. CARAHER, Deceased.

Surrogate's Court, Oneida County, October 1, 1930.

*M. B. Hall*, for Ella I. Sullivan, as administratrix of the estate of decedent.

*David B. Lisle*, for Ella I. Sullivan, individually.

*G. L. Prescott*, for William J. Carroll and others.

*E. P. O'Donnell*, special guardian for infants.

Evans, S.   Ella I. Sullivan, the administratrix of this estate, has filed her account to which objections were made by some of the interested parties.

By a process of adjustment the issues raised are now narrowed to one question concerning the ownership of a bank book and the fund that it represented.

Mrs. Sullivan is a sister of the decedent and claims that a few days prior to his death the decedent gave to her a bank book issued by the Syracuse Savings Bank that showed a balance of $4,579.92 on January 1, 1929.

There are here present some features not commonly found in litigation of this character.

The ownership of bank books under a claim of gift is usually determined in this court in a discovery proceeding instituted by the representative of the estate against the alleged donee.   This procedure was impossible due to the fact that the claimant is the representative of the estate.   The situation is further complicated on account of the book being transferred by the bank to Mrs. Sullivan in her official capacity as administratrix and on its face appears to be an asset of the estate.

The transfer was made on May 6, 1929, about three months after the death of the decedent.

Mr. Caraher was a bachelor about sixty-seven years of age at the time of his death, which occurred on February 8, 1929, in the city of Rome, N. Y. He left him surviving one brother, two sisters and many nephews and nieces, the children of deceased brothers and sisters.

For about thirty years the decedent was engaged in business in the city of Syracuse, N. Y., and about two years prior to the time of his death he came to Rome and lived in a room at No. 107 West Liberty street. He appears to have been on friendly terms with his relatives, making them occasional visits.

On January 28, 1929, in response to a telephone call from the decedent, Mrs. Sullivan with her daughter drove from their house in the town of Vernon to the city of Rome. According to the evidence offered by the claimant, the decedent on this occasion handed to her five of his bank books and asked her to take them to her home and put them in a safe. He selected the book in dispute and remarked: " This is the one that I have promised you and I want you to have it."

There is evidence that prior to this occasion the decedent had expressed his intention to make a gift to his sister for her kindness and care of their aged mother.

The claimant then took all of the bank books to her home and retained them.

On February 5, 1929, the claimant and her daughter drove to Rome and used their automobile in moving the decedent and his belongings from his rooming house to the residence of another sister, Mrs. Carroll, who resides on West Court street about two blocks distant.

According to the testimony of the daughter, there was a renewal of conversation between the claimant and decedent about the bank book in question and the claimant remarked that it would be impossible for her to draw any money in the book without a check or order signed by the decedent. There were no blanks available and the suggestion was offered by the daughter that any blank check might be used by changing the name of the bank. The decedent preferred to use a blank issued by the bank where the account was and instructed the daughter to procure one. The next day, on February 6, 1929, the husband of the claimant went to the Vernon bank and obtained the only blank order on hand of the Syracuse Savings Bank. This was filled out by the cashier with the exception of the signature of the decedent and the date. The unsigned order was taken to his home by Mr. Sullivan and handed to the claimant. The same afternoon she with her son and daughter went to Rome to obtain the signature of the decedent.

They found the decedent at the Carroll residence. He was down stairs sitting in a chair, fully dressed with a bathrobe over his other clothing.

According to the testimony of Miss Sullivan, the claimant produced a fountain pen that she had brought from home and the order was signed by the decedent with the arm of the chair for a rest or on a book resting on the arm of the chair. At this particular time, Mrs. Carroll and her son were not in the room and Mr. Carroll was not in the house.

The contestants have submitted testimony by the teller of a bank and some of the relatives of the decedent to the effect that the purported signature on the bank order is a forgery.

Mr. Carroll testified that for several hours, including the time when the decedent is said to have signed the order, the witness was in the same room with him and that no such transaction occurred.

The decedent died two days later and before the bank book and order were presented for payment at the bank.

While the decedent was not well, there was apparently no reason to expect such a sudden end.

There is nothing in the record to indicate that expectation of death was the motive that prompted the decedent to deliver possession of his bank books to Mrs. Sullivan.

One of the elements essential to sustain a gift *causa mortis* is apprehension of death by the donor. (*Reynolds* v. *Reynolds*, 20 Misc. 254; *Ridden* v. *Thrall*, 125 N. Y. 572.)

The signature on the order is important only as it serves to sustain or impeach the integrity of the transaction.

The gift of a savings bank book is accomplished by a transfer of the book itself from the donor to the donee and no order or assignment is necessary. (*Brophy* v. *Haeberle*, 220 App. Div. 511; *Matter of Van Derzee*, 66 Misc. 399; *Ridden* v. *Thrall*, 125 N. Y. 572.)

Considerable stress is laid by the contestants upon the fact that the account in the bank was transferred after the death of the decedent to the claimant as administratrix and not to herself personally.

A bank in receiving and paying out funds of a depositor acts as an agent. This legal status is thus subject to the well-established rule of agency that the death of the principal revokes the agency. Outstanding checks of a deceased depositor are, therefore, refused payment and money on deposit passes to the representatives of the estate. The payment by any bank of such funds without the written consent of the State Tax Commission is expressly forbidden and a heavy penalty is imposed for its violation. (Tax Law, § 227, as amd. by Laws of 1928, chap. 330; Opinions of Attorney-General, 1901, 312.)

The transfer of the account in the Syracuse Savings Bank to the administratrix in her official capacity was proper. No presumption was created for or against her individual right to the fund but it became a subject for adjudication by the Surrogate's Court.

The courts are unanimous in holding in cases of this kind that a rigid rule of caution must be observed. The sole witness to the actual gift of the bank book is the daughter of the claimant. This leads us to investigate whether other proof exists to support or condemn her testimony. There is the physical possession of the bank book in the hands of the claimant. There is no claim made by her of all the books in her possession. There is the letter written by the decedent relating the effect of his announcement to certain relatives of what he had done. Application for a blank order at the Vernon bank is inconsistent with a scheme to defraud. The visit to the Vernon bank was made the next day after the trip to Rome when the decedent moved, and tends to confirm the story of the needed blank.

It appears contrary to common sense that a shady transaction would be advertised by needlessly enlisting the services of a bank cashier in preparing the order.

The claimant was in Rome the same day that the order was prepared and with the decedent several hours, proving opportunity to execute it. The next morning the order bearing the purported signature of the decedent was presented at the Vernon bank. This was brief time in which to practice making a simulated signature. The success or failure of such an act was confined to one attempt in an order already prepared.

Notwithstanding the vigil of Mr. Carroll, or the opinion of the bank teller sworn as an expert, I am convinced that the signature of the decedent is genuine. It shows no patching or retouching and conforms in many ways to standard signatures.

The evidence as a whole and the circumstances surrounding the transaction show a spirit of friendliness for the claimant by the decedent. The proof is undisputed that he requested her to come to Rome. His letter to the claimant written a few days preceding his death shows a clear and unimpaired mind.

I think that a prompt and frank disclosure of this transaction by the claimant to the other relatives would have been wise, but her legal rights are unaffected by this omission.

I, therefore, hold and decide that the gift of the bank book by the decedent to the claimant has been established and this objection to her account is dismissed.

Decreed accordingly.