In the Matter of the Estate of CLINTON R. JAMES, Deceased.

Surrogate's Court, Kings County, June 19, 1933.

*Francis L. Archer*, for the executors.

*Reeves, Todd, Ely, Price & Beaty* [*Ambrose G. Todd* of counsel], for Evelyn M. James, individually.

*Albert S. Wright*, as special guardian of Roy and Marian Williams, infants.

*Barker, Perrigo & Bonynge* [*LeRoy B. Iserman* of counsel], for Alverda V. James, as administratrix of the estate of John F. James, deceased, Harold R. James, John F. James, Jr., and Frank M. Ledwith.

WINGATE, S. When this proceeding was last before the court, four questions were presented for a determination. The *first*, relating to a sale of the decedent's interest in the good will of the partnership business in which he was associated at the time of his death, was then decided; the *second*, respecting the indebtedness of John F. James to the estate, was referred to William Murray, Esq., as referee, and the remaining two were reserved. The referee has held protracted hearings on the questions referred to him and has filed his report wherein he finds that at the time of the death of the present testator, his brother John F. James was indebted to him in the sum of $41,178.70, and that this sum, with interest at two per cent on $40,000 and with interest at six per cent on $1,178.70, both computed from June 15, 1932, the date of the death of the testator, is presently due and owing.

The purpose of references of this type, which are designed to relieve the court of the necessity of personal attention to complex issues of fact, with consequent clogging of calendars and inconvenience to and the impairment of rights of other litigants, would be defeated were the court minutely to examine and review the testimony and factual issues determined by the referee. Quite aside from the considerations resulting from the habitual practice of the court to select as referees only those persons who, it is convinced, possess outstanding vision, learning and probity, it is a universally recognized principle that a trier of the facts who has seen and heard the witnesses is much more capable of assaying their veracity and the weight to be attached not only to their evidentiary statements, but also to inferences deducible therefrom, than one who has not enjoyed such advantage. (*Matter of Winsweiler*, 146 Misc. 436, 437, and cases cited.)

Concrete questions of law upon established facts may, and where necessary, should, be reviewed by the court, but, unless palpable

error is demonstrated, the determination of the facts is for the trier thereof.

In the case at bar the $40,000 note, made by John F. James and delivered to the decedent, was found in the possession of the latter. No attempt was made to prove that it has been paid, wherefore the only conceivable defenses against its enforcibility, granting that it was valid when given, which was not questioned, were that it was barred by the Statute of Limitations, or that it had been made the subject of a valid gift by the decedent to his brother. On both of these issues the presumptive debtor had the burden of proof. (*Matter of Housman,* 224 N. Y. 525, 526, 527; *Beugger* v. *Ashley,* 161 App. Div. 576, 581; *Whitney* v. *Whitney Elevator & Warehouse Co.,* 121 Misc. 461, 465; *Matter of Reich,* FOLEY, S., 138 id. 823, 825; *Matter of Gauthier,* 143 id. 788, 791; *Dougherty* v. *Equitable Life Assur. Soc.,* 144 id. 363, 380.) On neither was it sustained. It was demonstrated affirmatively by the estate that interest thereon had been paid to the decedent to the end of 1929. Whereas such payments were made by charges against John's account on the books of the concern in which both were partners, the law raises a wholly unrebutted inference that such charges and the corresponding credits were accomplished with the consent and knowledge of the debtor-partner. (*Fairchild* v. *Fairchild,* 64 N. Y. 471, 480; *Flour City Nat. Bank* v. *Widener,* 163 id. 276, 280; *Matter of Brown,* FOLEY, S., 116 Misc. 483, 485.)

The fact that the note was in the possession of the decedent at the time of his death overcomes any inference of gift which might have been raised by his general declarations to others. The principle of law here applicable has been repeatedly reiterated; thus " the delivery necessary to consummate a gift must be as perfect as the nature of the property and the circumstances and surroundings of the parties will reasonably permit; there must be a change of dominion and ownership; intention or mere words cannot supply the place of an actual surrender of control and authority over the thing intended to be given." (Per CRANE, J., in *Vincent* v. *Rix,* 258 N. Y. 76, 83.) " Because many gifts are sought to be shown by oral evidence after the donor's death, it is necessary for the public good to require clear and satisfactory evidence of the fact to prevent fraud and perjury. There must be a delivery which results in a present change of dominion and ownership. Intention or mere words cannot supply the place of an actual surrender of control and authority over the thing intended to be given." (*Matter of Van Alstyne,* 207 N. Y. 298, 308.)

As is noted in the case last cited, *Ridden* v. *Thrall* (125 N. Y. 572, 577) indicates that the properly effective manner of a gift of a

note is by delivery thereof. It is a note obligation which is here in question. It was demonstrated that this note was continually available in the safe in the office which decedent and John jointly occupied, their desks only a few feet apart, yet no delivery was made.

The conclusion is inevitable that whatever may have been testator's intention, on which subject opinions may well differ, the legal prerequisites to a valid gift were not accomplished. It follows that the report of the referee must be confirmed.

In order to assay the practical result of this determination, it will be necessary next to consider one of the questions which was reserved at the time of the former hearing before the court, respecting the construction to be placed on items " third " and " seventh " of the will. The former reads: " I give to my brother John F. James the sum of Forty-seven thousand five hundred (47,500) Dollars, but there shall be deducted from the said legacy all debts due by him to the firm of John F. James & Sons as appears from the books of the partnership."

The " seventh " item is identically worded except for the substitution of Frank M. Ledwith as the legatee and $5,000 as the amount.

These two beneficiaries were copartners of the decedent in the named firm and at the death of the latter were indebted to the firm in the sums of $14,286.57 and $3,090.53 respectively.

The question of construction propounded relates to whether these sums, by which the respective legacies are to be reduced, are payable to the firm in solution of the obligations of the designated copartners or are simply abated from the face value of the legacies to the direct enrichment of the estate of this testator.

It is unquestionable, as indeed the opposing counsel have amply demonstrated, that extended argument may be advanced in favor of either position. The former intent would have been made certain by a direction that the respective debts should be deducted and paid over to the firm; the latter would have received reinforcement had the direction read that a deduction from the specified amount should be made " equivalent to " such debts.

The legatees, in effect, contend that the former should be read into the will while their opponents advocate a construction which would substantially substitute the latter.

To the court the former interpretation appears the more logical. It was obviously testator's desire that the respective legatees should benefit from his estate to the extent, and only to the extent, of the sums inserted in the several bequests for their benefit.

Viewing the matter from the negative angle, it is obvious that a provision of the type inserted in the will would be necessary if they

were indebted to the partnership firm, were insolvent and the firm possessed outside creditors, to prevent the possibility of their receiving more than the sums which testator desired them to receive. As to the firm creditors, the estate would, on such a contingency, have been liable, with the result, had such an insertion not been made, that the funds of the estate would have been depleted in the indirect interest of these beneficiaries by the amounts which the estate would have been obliged to contribute for this purpose by reason of the impairment of the firm capital by their overdrafts. They might thus potentially receive at the expense of the estate the amounts by which the testator desired to benefit them as stated in the will and in addition, a sum equivalent to that by which they were indebted to the firm. The construction urged by the legatees would foreclose this possibility while simultaneously giving effect to testator's expressed intent that they, respectively, receive benefits of the specific sums bequeathed. By this construction, the overdrafts take on the semblance of advancements or personal loans.

The alternative suggested by the executors would amount, in substance, to the infliction of a penalty upon the legatees without any corresponding wrong on their part, since there is absent any intimation that testator, as the active partner of the concern, deemed these overdrafts, made during his lifetime, in any way improper. It would also produce the result of direct contravention of testator's obvious desire that they receive benefits from his estate in the specified amounts.

The court, therefore, determines that the results of items " third " and " seventh " of the will are to give John F. James a legacy of $47,500, of which $14,286.57 is payable to the partnership in solution of his indebtedness to it, and $33,213.43 would, except for the extraneous fact of his greater debt to the testator, be payable to him; and to give to Frank M. Ledwith a legacy of $5,000, of which $3,090.53 is payable to the partnership in satisfaction of his equivalent debt, and $1,909.47 to him.

By reason of the greater debt of John F. James to the estate, as found by the referee, nothing whatsoever is payable by the estate to him. On the contrary, he is indebted to it.

The financial result thus attained is that these bequests are payable: To the partnership, $17,377.10; to Ledwith, $1,909.47, and to John F. James, nothing.

The final question of the petition was propounded only on the condition that the court determined that the deductions from the legacies for John F. James and Ledwith were not payable to the

firm. Since the decision is to the contrary, this question becomes unimportant.

Whereas it would seem to be legally unquestionable that it is within the power of the Surrogate's Court to direct the winding up of the affairs of this firm, such jurisdiction should be sparingly exercised and will not be entertained on the facts herein disclosed.

Proceed accordingly.