In the Matter of the Estate of JOHN H. WHITE, Deceased.

Surrogate's Court, Orange County, August 24, 1933.

*Robert G. Groves* [*George F. Kaufman* of counsel], for the objector.

*J. R. Thompson* [*Henry Hirschberg* of counsel], for the administrator.

TAYLOR, S. One John H. White died April 15, 1931, and letters of administration upon his estate were issued to his son Franklin G. White. No mention was made in the petition for administration, nor upon this application to account, of another son, now commonly known by the name of Charles W. Mackey. It seems that the latter was long since taken by another family and the decedent apparently ever since failed to recognize this son as his own. He has appeared upon this accounting, however, and no question of relationship is now raised.

Upon the preliminary examination of the administrator, it appeared that there were two accounts of quite substantial amounts in the Newburgh Savings Bank in the name of decedent which the administrator claims personally as gifts from the decedent in his lifetime.

The parties agreed, and indeed there could have been no question, that the burden of proving a gift is upon the one so claiming. (*Matter of Housman,* 224 N. Y. 525; *Matter of Booth,* 215 App. Div. 516; *Matter of O'Connell,* 33 id. 483; *Matter of Ehlers,* 132 Misc. 910; *Matter of Brennan,* 140 id. 469; affd., 234 App. Div. 736; *Matter of Brown,* 130 Misc. 865; modfd., 225 App. Div. 759; *Matter of James,* 148 Misc. 124; *Matter of Canfield,* 176 App. Div. 554.)

The alleged donee went forward with the proof, from which it appeared that on the day of the alleged gift, November 14, 1930, the decedent was confined to his bed at the home of his son Franklin G. White, and that about noontime that day his physician called.

The bedroom was a small one. The physician and Franklin G. White were in the room; Eric Johnson White, the administrator's son, was in the doorway, and the latter's wife sat in the adjoining room but nearby. Evidence on the part of the donee as to his possession of the bank books in question was excluded under section 347 of the Civil Practice Act, and under the authority of *Clift* v. *Moses* (112 N. Y. 426) and Richardson on Evidence (§ 467).

Decedent told his son Franklin G. White to get his, decedent's, bank books, which was done. Thereupon, according to the testimony of Eric Johnson White, decedent, addressing his son, said: " Franklin, I want you to have them and keep them. What money I got I want you to have." The witness' father took the books, kept them in his hand until the physician left and then put them in a strong box. Eric Johnson White had seen his grandfather write and testified to the latter's signature on a check offered in evidence. The proof refers to two checks, but only one has been presented in this case.

The grandson further testified that decedent previous to the time of the alleged transfer had suffered a stroke paralyzing the left side, but was able to write. About two months prior to this transaction, decedent said to his grandson: " I will never get out of this bed." That proved to be so. It is in the evidence that the decedent, when the name of the objectant here was mentioned, spoke ill of his son Charles. Although the donee's daughter-in-law on her direct examination corroborated her husband, on cross-examination she stated that she was not married at the time of the alleged gift and lived elsewhere. She was either confused as to the year of her marriage, or her testimony was false. I am inclined

to think it was the former, but whatever the fact may be in view of the documentary proof I shall disregard her testimony.

If this were the extent of the proof I should not hesitate to find it insufficient upon which to predicate the gift, for the authorities are as one to the effect that in cases of this nature the gift must be proved by clear and convincing evidence. (*Hamlin* v. *Stevens*, 177 N. Y. 39; *Donnarumma* v. *Potter*, 211 App. Div. 54; *Ennis* v. *Chichester*, 187 id. 53; affd., 227 N. Y. 633; *Rosseau* v. *Rouss*, 180 id. 116; *McKeon* v. *Van Slyck*, 223 id. 392; *Matter of Ehlers*, 132 Misc. 910.)

Other proof indicates strongly an apparent purpose on decedent's part to dispose of all, or a large part, of his property during his lifetime. An officer of another bank, in which decedent also had an account, called at the depositor's house on November 10, 1930, but four days previous to the transaction in question, pursuant to request, and prepared a check to transfer that account to decedent's name in trust for Franklin G. White. Decedent at that time was able to sign his name without assistance and this bank officer testified that the signature on the check drawn on his bank and that on the Newburgh Savings Bank were similar. The check offered in evidence is in the following form:

"NEWBURGH, N. Y. *November* 14th, 1930.
THE NEWBURGH SAVINGS BANK.

" Pay to Franklin G. White or bearer payable at my death.
amount on deposit　　　　　　　　　Dollars.
" Witness W. L. DUNNING, M. D.
"And charge account　Balance　　Signature　　JOHN C. WHITE
" No. 101447　　　$. . . . . . . . . .Present Residence　　　　　."

The name " Franklin G. White " as payee was in the handwriting of the president of the Newburgh Savings Bank. The physician's signature appears upon the check as " witness." These items were testified to by the attorney for the estate and are not disputed. The physician has since died. There is no testimony as to the other writing upon the check, but the date and " payable at my death " bear a striking resemblance to the physician's signature.

The undisputed transfer of an account in another bank but four days prior to the transaction in question and the check upon one of the Newburgh Savings Bank accounts with accompanying proof of part of the writing thereon overcome the doubt which the adjudged cases say must be given to proof by claimant's immediate family in transactions of this nature.

I have not overlooked the administrator's negative answer to

the question in the estate tax deposition whether there was any transfer in contemplation of death. That answer was untruthful, but whether intentionally so or otherwise is not now necessary to determine.

"The elements necessary to constitute a valid gift are well understood and are not the subject of dispute. There must be on the part of the donor an intent to give, and a delivery of the thing given, to or for the donee, in pursuance of such intent, and on the part of the donee, acceptance." (*Beaver* v. *Beaver*, 117 N. Y. 421, 428.)

"The law books are filled with decisions indicating the necessary elements of a valid gift — the essentials being donative intent and executed delivery. A mere intention to make a gift confers no rights. The intention must be executed by delivery. * * * To sustain the gift, there must be among other things such a delivery as will vest in the donee control and dominion over the objects of the gift." (*Matter of Brown*, 130 Misc. 865, 870, 871; modfd., 225 App. Div. 759.)

"The essential elements to constitute such a gift are that it must have been made in contemplation of the donor's impending death, by a clearly expressed intention to give *in præsenti;* the subject matter of the gift must have been delivered and the donor must have died from the existing ailment or peril without revocation of the gift." (*O'Brien* v. *Elmira Savings Bank*, 99 App. Div. 76, 79.)

In *Matter of Barefield* (177 N. Y. 387, 393, 394) the mother in her lifetime deposited money in a savings bank in her own name and then delivered the bank book to the daughter with a written order directing the bank to pay the daughter the amount and interest due on the book. It was held that this was proof of the daughter having obtained title to the book and account by gift.

In *Ridden* v. *Thrall* (125 N. Y. 572) the proof of the delivery of the bank book was by claimant's wife and, said the court, "if the case depends upon the evidence of the wife alone, any court might well hesitate to uphold the gift," but there was corroboration in a letter by decedent addressed to claimant and the gift was upheld.

In *Matter of Van Derzee* (66 Misc. 399) the only oral testimony as to the gift there in question was by claimant's wife, but she was corroborated by an indorsement upon the bond and mortgage in the donor's handwriting to the effect that the testatrix had given the bond and mortgage to the claimant.

In *Matter of Caraher* (138 Misc. 10) the sole witness to the actual gift of the bank book was claimant's daughter. The gift was sus-

tained upon this proof corroborated by the production of an order upon the bank.

All the elements of a gift are here present.

Attention is directed by the objectant to section 325 of the Negotiable Instruments Law, which provides that a check of itself does not operate as an assignment of any part of the funds on deposit. This section is inapplicable to savings bank accounts, for delivery of the pass book itself, which is on an altogether higher plane than pass books of commercial banks as *indicium* of ownership and even without the execution of a check or order, the delivery of savings bank books constitutes complete gifts of a part or whole of the account represented thereby. (*Matter of Caraher*, 138 Misc. 10; *Ridden* v. *Thrall*, 125 N. Y. 572; *Baxter* v. *Gillen*, 179 App. Div. 902; *Wetherow* v. *Lord*, 41 id. 413; *McGuire* v. *Murphy*, 107 id. 104; Anno. to *Snidow* v. *Brotherton*, 40 A. L. R. 1246, 1250, 1258.)

The objections are dismissed and decree may be entered settling the account as filed.